45503, 45504. SUDDETH v. FORSYTH COUNTY et al.;
and vice versa.
(373 SE2d 746)

HUNT, Justice.

These appeals concern Suddeth's application pursuant to Section

---

15-1.3 of the Comprehensive Zoning and Land Use Resolution of Forsyth County (the zoning ordinances)[1] for a special-use permit to operate an airport in Forsyth County. After the Board of Commissioners of Forsyth County denied his request for a permit, Suddeth filed suit in superior court, naming the county and the individual members of the Board of Commissioners of Forsyth County as defendants (all defendants hereinafter will be referred to collectively as the board). The court denied the relief Suddeth sought, and Suddeth filed a notice of appeal. The board subsequently moved to dismiss the appeal on the ground of unreasonable and inexcusable delay. OCGA § 5-6-48 (c). The court denied the motion, and the board cross-appealed that ruling.

### Case No. 45504. The Board's Cross-Appeal.

1. The record does not support the board's contention that the trial court abused its discretion by denying the board's motion to dismiss Suddeth's appeal pursuant to OCGA § 5-6-48 (c). The trial court's denial of that motion is affirmed.

### Case No. 45503. Suddeth's Appeal.

2. Suddeth contends the trial court erred by failing to grant a

---

[1] Section 15-1.3 of the zoning ordinances states that:

The County Commission may issue a general airport use permit provided:

(a) The proposed airport site shall be of sufficient size to meet the Federal Aviation Administration requirements for the class of airport proposed.

(b) There shall be no existing or proposed flight obstructions such as towers, chimneys or other natural obstructions outside the proposed airport which would fall within the approach zone to any of the proposed airport runways or landing strips.

(c) There shall be sufficient distance between the end of each usable landing strip and the airport boundary to satisfy the requirements of the Federal Aviation Administration and in no event shall the landing strip, or strips, be less than 200 feet from any property line. In cases where air rights or easements have been acquired from the owners of abutting properties in which approach zones [sic], satisfactory evidence thereof shall be submitted with the application.

(d) Adequate space for off-street parking shall be provided.

(e) Application shall be accompanied by a plan, drawn to scale, showing the proposed location of the airport; boundary lines; dimensions; names of the owners of abutting properties; proposed layout of runways; landing strips or areas, taxi strips, aprons, roads, parking areas, hangars, buildings, and other structures and facilities; the location and height of all buildings, structures, trees, and overhead wires falling within the airport approach zone in less than 500 feet distance from the boundary lines of the airport; other pertinent data such as topography and grading plan, drainage, water, and sewage, etc.; such licenses and permits as may be required by the Federal Aviation Administration and the Georgia Department of Transportation for the class of airport proposed.

(f) All applications for general airport use permits shall be subject to the same notice and review procedures required for the enactment of amendments to this resolution.

(g) Said County Commission shall have determined that all of the foregoing requirements have been satisfied, and further, that the benefits of and need for the proposed airport are greater than any possible depreciating effects and damages to the neighboring properties.

writ of mandamus requiring the board to issue a special-use permit. Suddeth argues he has a clear legal right to the permit because it is uncontroverted he has satisfied all the requirements of Section 15-1.3 except for subsection (g), and because, he argues, subsection (g) is constitutionally invalid. We disagree. Section 15-1.3 (g) of the zoning ordinance provides:

> The County Commission may issue a general airport use permit provided: . . . Said County Commission shall have determined that all of the foregoing requirements have been satisfied, and further, that the benefits of and need for the proposed airport are greater than any possible depreciating effects and damages to the neighboring properties.

We have invalidated statutes permitting the unfettered discretion of governing authorities to issue permits or licenses. See, e.g., *Arras v. Herrin*, 255 Ga. 11 (334 SE2d 677) (1985); *Crymes v. DeKalb County*, 258 Ga. 30 (364 SE2d 852) (1988); *Fulton County v. Bartenfeld*, 257 Ga. 766 (363 SE2d 555) (1988). Compare *Lithonia Asphalt v. Hall County Planning Comm.*, 258 Ga. 8 (364 SE2d 860) (1988), compare *Levendis v. Cobb County*, 242 Ga. 592, 594 (1) (250 SE2d 460) (1978). The ordinances in *Crymes* and *Bartenfeld* set forth *no* criteria governing the authority's exercise of discretion. The question here, as in *Arras, Lithonia Asphalt,* and *Levendis,* is "whether this ordinance . . . is drawn with sufficient specificity to apprise an applicant of common intelligence of the standards which he should anticipate the governing body will consider." *Levendis,* supra at 594.

An examination of the language of ordinances which have failed to withstand a constitutional challenge is helpful in answering the foregoing question. In *Arras*, we held unconstitutional a liquor license ordinance which provided:

> "[t]he Board shall have full and sole authority, in its absolute discretion, to determine whether the applicant for a license . . . is a fit and proper person to operate the type of business involved . . . and whether the location of such business is proper and to the best welfare and in the best interests of Camden County. . . ."

*Arras*, supra at p. 11. In *Lithonia Asphalt* we held invalid a special-use ordinance which required the planning commission to find, with regard to the special use sought, that

> "the proposed location, construction, and operation will not injure unduly the surrounding developments or the community either present or future."

*Lithonia Asphalt,* supra at p. 9, fn. 1. The ordinance here, unlike those in *Arras* and *Lithonia,* requires the board to conduct a balancing test. Specifically, the board is required to assess, first, "the benefits of and need for the proposed airport," and second, "any possible depreciating effects and damages to the neighboring properties," and, finally, to determine whether the former outweigh the latter.

We find the balancing test imposed on the board by the Forsyth ordinance sufficiently restricts the exercise of the board's discretion and distinguishes this ordinance from those considered in *Arras* and *Lithonia Asphalt.* While the zoning ordinance might have set forth in greater detail the criteria to be considered by the board in making its decision, nonetheless subsection (g) is not so vague as to be constitutionally deficient and does establish "ascertainable standards . . . by which an applicant can intelligently seek to qualify. . . ." *Hornsby v. Allen,* 326 F2d 605 (5th Cir. 1964). See *Levendis,* supra; *Tempo Management, Inc. v. DeKalb County,* 258 Ga. 713 (____ SE2d ____) (1988).

3. Suddeth also contends the trial court should have granted his writ of mandamus because he demonstrated the board grossly abused its discretion in denying his application for a special-use permit. In this regard, Suddeth was required to show that the discretionary denial of his permit application was arbitrary, capricious and unreasonable. *Carnes v. Charlock Investments (USA), Inc.,* 258 Ga. 771 (____ SE2d ____) (1988).[2] Suddeth argues the board's decision was based entirely on public opposition to the proposed airport. While there was significant public opposition before the board, there was also sufficient evidence that the airport would be inappropriate given the residential character of the surrounding neighborhoods and would encroach on those neighborhoods. Accordingly, we find the evidence supports the trial court's conclusion that the board did not abuse its discretion in denying Suddeth's application under Section 15-1.3 (g) of the zoning ordinance.[3]

---

[2] The trial court was required to affirm the board's decision unless the board acted arbitrarily, capriciously, and unreasonably. Id. The trial court's determination whether the board abused its discretion is a question of law, reviewable by this court. Id.

[3] We note that after the hearing before the board, the trial court heard evidence on the merits of Suddeth's application and on the reasons for the board's denial of Suddeth's application. Properly, the procedure to be followed in a case such as that presented here, where a special permit is sought under the terms set out in an ordinance, is as follows:

[T]he landowner must present his case on its facts and the law to the governing body. That body acts in a quasi-judicial capacity to determine the facts and apply the law. [Cits.] A disappointed landowner travels to superior court by direct appeal, if the zoning ordinance so provides, or otherwise by mandamus. [Cit.] *The superior court is bound by the facts presented to the local governing body.* The law, of course, is determined anew by the superior court. In a mandamus action, the landowner is entitled to relief only where he has established before the local governing

*Judgments affirmed. 45503. All the Justices concur, except Smith and Bell, JJ., who dissent. 45504. All the Justices concur.*

DECIDED NOVEMBER 30, 1988.

*Baker & Baker, Elliott R. Baker,* for appellant.
*Robert S. Stubbs III,* for appellees.

body a clear legal right to the relief sought, or demonstrates to the superior court a gross abuse of discretion. [Emphasis supplied.]
*Dougherty County v. Webb,* 256 Ga. 474, 477 fn. 3 (350 SE2d 457) (1986). Thus, while the trial court was authorized and required to pass on the applicable law regarding the denial of Suddeth's application, the trial court was bound by the facts presented to the board. In his order upholding the board's decision, the trial court referred to, and apparently considered, evidence taken subsequent to the board hearing. Nevertheless, the trial court also properly considered the evidence presented at that hearing, which was sufficient to support the trial court's conclusion that there was no abuse of discretion by the board in this case.