S94A0975. PARKING ASSOCIATION OF GEORGIA, INC. et al. v. CITY OF ATLANTA.

(450 SE2d 200)

THOMPSON, Justice.

The City of Atlanta enacted a zoning ordinance aimed specifically at surface parking lots with 30 or more spaces in several downtown and midtown zoning districts. The ordinance requires minimum barrier curbs and landscaping areas equal to at least ten percent of the paved area within a lot, ground cover (shrubs, ivy, pine bark or similar landscape materials) and at least one tree for every eight parking spaces. Its stated purpose is to improve the beauty and aesthetic appeal of the City, promote public safety, and ameliorate air quality and water run-off problems. All costs of compliance with the ordinance are to be borne by the landowners; however, no landowner is required to reduce the number of parking spaces by more than three percent.

Plaintiffs, an association of companies managing or owning surface parking lots in the affected areas, as well as individual owners of affected parking lots, brought suit against the City seeking declaratory and injunctive relief on the grounds that the ordinance is unconstitutional and void. The superior court ruled in favor of the City and denied injunctive relief. Plaintiffs appealed.

1. The zoning ordinance does not authorize a permanent physical taking or occupation of plaintiffs' property by another; it merely regulates the use of plaintiffs' property. Compare *Loretto v. Teleprompter &c. Corp.*, 458 U. S. 419, 426 (102 SC 3164, 3171, 73 LE2d 868) (1982) with *Yee v. City of Escondido*, ____ U. S. ____ (112 SC 1522, 1526, 118 LE2d 153) (1992). Thus, the ordinance does not constitute a per se taking entitling plaintiffs to compensation. It follows that we must assess and weigh the purposes and economic effects of the ordinance to determine if it "exceeds the police power in regulating land use for zoning . . . [and] run[s] afoul of the constitutional prohibition against condemnation of land for a public purpose without just compensa-

tion. [Cit.]" *Fulton County v. Wallace*, 260 Ga. 358, 360 (393 SE2d 241) (1990).

2. This state uses a balancing test to determine whether the

police power has been properly exercised. This test weighs the benefit to the public against the detriment to the individual. The factors to be considered are set forth in *Guhl v. Holcomb Bridge Rd. Corp.*, 238 Ga. 322 (232 SE2d 830) (1977). A zoning ordinance is presumptively valid, and this presumption can be rebutted only by clear and convincing evidence. *Guhl v. Holcomb Bridge Rd. Corp.*, supra. The burden is on the plaintiff to come forward with clear and convincing evidence that the zoning presents a significant detriment to the landowner and is insubstantially related to the public health, safety, morality and welfare.

*Gradous v. Bd. of Commrs.*, 256 Ga. 469, 471 (349 SE2d 707) (1986).

Plaintiffs failed to present clear and convincing evidence that the ordinance presents a significant detriment. Plaintiffs may experience a loss of profits due to a reduction in the number of available parking spaces[1] and the costs of compliance;[2] however, a zoning ordinance does not exceed the police power simply because it restricts the use of property, diminishes the value of property, or imposes costs in connection with the property. See *Gradous v. Bd. of Commrs.*, supra at 471; *Rockdale County v. Mitchell's Used Auto Parts*, 243 Ga. 465 (254 SE2d 846) (1979). A loss of at most three percent of plaintiffs' parking spaces does not constitute a significant deprivation. Cf. *Lamar Advertising v. City of Albany*, 260 Ga. 46 (389 SE2d 216) (1990) (sign ordinance which destroys substantial part of business without compensation is unconstitutional).

Plaintiffs also failed to present clear and convincing evidence that the ordinance is unsubstantially related to the public health, safety, morality and welfare. The ordinance was designed to regulate aesthetics, crime, water run-off, temperature and other environmental concerns. The means adopted have a real and substantial relation to the goals to be attained.

An ordinance is not unreasonable even if designed only to improve aesthetics.

[L]egislation based on aesthetics is within the public welfare

---

[1] Plaintiffs may also experience a decline in billboard rentals because the required trees may obstruct their view.

[2] Estimated cost of compliance for all lots is $4,375,000; estimated cost of compliance for a typical lot with 50 parking spaces is $12,500.

aspect of the police power. "The concept of the public welfare is broad and inclusive. (Cit.) The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." [Cits.]

*H & H Operations v. City of Peachtree City*, 248 Ga. 500, 501 (283 SE2d 867) (1981).

If the plaintiff does not meet the initial burden of showing both significant detriment and insubstantial relationship to the public health, safety, morality and welfare, there is no need for the governing authority to present any evidence justifying the zoning. [Cit.]

*Gradous v. Bd. of Commrs.*, supra at 471. Plaintiffs failed to meet either prong of this state's balancing test. The ordinance is constitutional and valid.[3]

3. Plaintiffs assert the ordinance constitutes an unconstitutional denial of equal protection because it only applies to paved parking lots with 30 or more spaces in downtown and midtown zoning districts. We disagree.

A zoning ordinance does not offend the equal protection clauses of the State and Federal Constitutions if "it has some fair and substantial relation to the object of the legislation and furnishes a legitimate ground of differentiation. [Cit.]" *Bailey Investment Co. v. Augusta-Richmond County Bd. of Zoning Appeals*, 256 Ga. 186, 187 (345 SE2d 596) (1986). The larger lots have a far greater impact upon aesthetics, water run-off, temperature, pedestrian traffic and other health, safety and environmental concerns; the affected districts have the greatest concentration of parking lots. Thus, the ordinance rationally differentiates between larger and smaller parking lots and be-

---

[3] The ordinance passes constitutional muster under federal taking analysis, too. It advances legitimate governmental interests and leaves the plaintiffs with an economically viable use in their property. *Agins v. Tiburon*, 447 U. S. 255 (100 SC 2138, 65 LE2d 106) (1980).

Plaintiffs' reliance upon *Dolan v. City of Tigard*, 512 U. S. ___ (114 SC 2309, 129 LE2d 304) (1994), is misplaced. In that case, the city required an applicant for a building permit to deed portions of her property to the city. The Supreme Court held the required dedication violated the Takings Clause because the city did not "make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the development." Id. at 2319. Here the city made a legislative determination with regard to many landowners and it simply limited the use the landowners might make of a small portion of their lands. Moreover, the city demonstrated a "rough proportionality" between the requirements and objectives of the ordinance. See id.

tween affected and unaffected zoning districts. " 'If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.' " *DeKalb County v. Chamblee Dunwoody Hotel Partnership*, 248 Ga. 186, 190 (281 SE2d 525) (1981) (quoting *Euclid v. Ambler Realty Co.*, 272 U. S. 365, 388 (47 SC 114, 71 LE 303) (1926)).

*Judgment affirmed. All the Justices concur, except Hunt, C. J., Sears and Carley, JJ., who dissent.*

SEARS, Justice, dissenting.

I disagree with the majority's application of the significant detriment test to this case. That test is essentially the same as the "economically viable use" test employed by the United States Supreme Court. See Ziegler, Rathkopf's The Law of Zoning and Planning, § 6.08 [1]. The significant detriment test looks to the land as a whole to evaluate a takings claim, as well as to factors such as " 'the suitability of the subject property for the zoned purposes,' " *Guhl v. Holcomb Bridge Rd. Corp.*, 238 Ga. 322, 323 (232 SE2d 830) (1977), and "the character of the neighborhood, the zoning, and the use of properties nearby," Ziegler, § 6.08 [1], at 6-34. Although that test and some of its factors are well-suited to rezoning cases, they are not well-suited to cases such as this one in which a local government has sought to extract a benefit for the public from only a portion of a whole parcel of property. In such cases, courts have established an exception to the "economically viable use" or "significant detriment" takings standard.

> [A] regulation may be held a taking, even though the owner is afforded an economically viable use of the property, under benefit-extraction taking analysis when the burden imposed by [the] regulation is found to be one that, as a matter of fairness and justice, should be borne by the public as a whole.

Ziegler, § 6.08 [1], 6-29, n. 4.

> This line of taking analysis reflects the traditional distinction, often noted in commentary and court decisions, between regulation that performs an arbitration or harm prevention function, where the result sought to be achieved distinctly relates to some problem involving or generated by a private owner's activity or proposed use, and regulation that simply secures a public benefit . . . at the unfair expense of private owners who are simply convenient targets of opportunity for extracting the benefit.

Id. at § 6.10 [1], 6-91, 6-92.

Extractions for the public benefit are generally upheld if two requirements are met: First, that the extraction is closely related to a particular problem generated by the owner's use of his land, 1 Ziegler at § 6.10 [1], [6] [c]; *Nollan v. California Coastal Comm.*, 483 U. S. 825, 835-840 (107 SC 3141, 97 LE2d 677) (1987); *Dolan v. City of Tigard*, 512 U. S. \_\_\_\_ (114 SC 2309, 129 LE2d 304) (1994); and second, that the extraction represents the property owner's proportion of the particular problem, 1 Ziegler at § 6.10 [1], [6] [c]; *Nollan*, 483 U. S. at n. 4, 835-836; *Dolan*, 129 LE2d at 320. A host of courts have applied these standards both before and after *Nollan*. See 1 Ziegler, § 6.10.[4] A significant feature of the benefit-extraction analysis is that an extraction may constitute a taking under it even though it would not under the "economically viable use" or "significant detriment" test. See 1 Ziegler, § 6-10 [1]; *Dolan*, 129 LE2d at 316, n. 6.[5]

In addition to the factors mentioned above, I think several other factors are relevant to a benefit-extraction analysis in this case. One is that, typically, extractions of this kind are imposed upon private owners at the developmental stage of property use. 1 Ziegler, § 6.10 [6] [a]. At that stage, the owner has the option to decline to develop if the extractions are too costly. Here, the property owners have no such choice. Although the retroactive nature of an extraction might not be decisive if the property owners' use of the property clearly necessitated the extraction, it should weigh against the local government in the fairness equation if the government's justification for the extraction is weak.

Finally, in analyzing whether an extraction is an expense that in fairness and justice should be paid for by the public as a whole, I would consider the nature of the governmental interest at stake. For instance, if, in fact, an extraction would actually promote nothing more than the aesthetics of the community, rather than a more compelling public interest such as the public safety, I would weigh that factor against the local government.

As the benefit-extraction analysis test that I propose has not previously been utilized in this state, I would remand this case to the trial court for it to resolve the case using this analysis.

---

[4] Thus, for instance, under this analysis, an ordinance requiring a junkyard to erect some buffer around its business would in all likelihood pass constitutional muster.

[5] I do not decide in this dissent whether the property owners or the city should have the burden of proof. However, *Dolan* lends support to the proposition that the city should bear the burden. In *Dolan*, the Supreme Court placed the burden on the city because it had singled out a particular parcel to bear an extraction. *Dolan*, 129 LE2d at 320, n. 8. Here, the city has singled out a particular use within the city to bear the extraction. Moreover, the city has retroactively imposed the extraction. These are persuasive reasons to require the city to justify the extractions.

I am authorized to state that Chief Justice Hunt and Justice Carley join in this dissent.

DECIDED NOVEMBER 28, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994.

*Schreeder, Wheeler & Flint, David H. Flint, Mark W Forsling,* for appellants.
*David D. Blum, Robert L. Zoeckler, Joe M. Harris, Jr., Clifford E. Hardwick IV,* for appellee.