## S03A0552. GREATER ATLANTA HOMEBUILDERS ASSOCIATION et al. v. DeKALB COUNTY et al.

(588 SE2d 694)

FLETCHER, Chief Justice.

This case involves a constitutional challenge to DeKalb County's Tree Ordinance. The trial court upheld the statute. Because the Tree Ordinance is not invalid as alleged by appellants, we affirm.

In February 1999, DeKalb County's Board of Commissioners passed a comprehensive Tree Protection Ordinance. The ordinance recognizes "the many benefits that can be directly attributable to trees" and that regulation of tree preservation "is necessary for the preservation of the public health, safety, general welfare, environment and aesthetics." The County concluded that new regulations were needed in order to "provide proper and sufficient regulation of the removal and/or replacement of trees as part of land development." Three weeks later, Greater Atlanta Homebuilders Association, a nonprofit trade association whose members develop real property and engage primarily in the construction of single-family residences, and RLR Associates, a corporation that owns property in DeKalb County and is involved in the development of real property and residential construction, filed this action challenging the ordinance.

### Zoning Procedures Law

1. Appellants contend that the Tree Ordinance and its four amendments are invalid because they were not enacted in accordance with the Zoning Procedures Law, OCGA § 36-66-1 et seq., which imposes minimum due process standards upon local governments when they adopt or amend zoning ordinances.[1] A zoning ordinance is one that establishes "procedures and zones or districts . . . which regulate the uses and development standards of property within such zones or districts."[2] Whether a local regulation is a zoning ordinance subject to the ZPL is determined by evaluating the reg-

---

[1] Appellants' argument treats the ordinance and its four amendments as if they had been enacted at one time, rather than treating the amendments as separate legislative actions. Compare OCGA § 36-66-3 (4) (B) and (C) (requirements of ZPL apply to adoption of individual amendments).

[2] OCGA § 36-66-3 (5).

ulation "as a whole to determine whether or not it involves dividing a governmental unit into zones or districts and applying different standards to such zones or districts in regard to property therein."[3]

In applying this standard, we conclude that the Tree Ordinance, viewed as a whole, does not regulate according to zones or districts. Instead the Tree Ordinance applies uniformly to all land in unincorporated DeKalb County by regulating the effect that development will have on tree coverage in the County. The Tree Ordinance applies to every building and development permit that allows land disturbance, regardless of the zoning district. The Tree Ordinance contains only three references to zones or districts.[4] These limited references to districts do not turn the ordinance into a zoning ordinance in light of the fact that the majority of the ordinance's requirements apply uniformly to all land and to all land disturbance activities regardless of the location of that land within the County.

### Takings Claims

2. Appellants contend that the Tree Ordinance effects a regulatory taking of their property without just compensation in violation of the Georgia and federal constitutions.[5] The County contends that this challenge to the Tree Ordinance is not ripe for review because appellants have not exhausted administrative remedies. In determining ripeness, it is important to distinguish between "as applied" and "facial" challenges. "Before litigants seek a declaration by a court of equity that a[n] . . . ordinance is unconstitutional *as applied* to their property, they must apply to the local authorities for relief."[6] Facial challenges, however, have no ripeness requirement.[7] Appellants have not shown that the Tree Ordinance has been applied to them in any way, and therefore, raise a facial challenge rather than

---

[3] *City of Walnut Grove v. Questco, Ltd.*, 275 Ga. 266, 267 (564 SE2d 445) (2002).

[4] In four specified zoning districts, stream buffers and 100-year floodplains may be included in certain mathematical calculations; in some residential districts front yard trees are required with new construction; and landscaping density requirements differ depending on whether the property is residential or non-residential/multifamily.

[5] Ga. Const. art. I, § III, para. I (a); U. S. Const. amend. 5.

[6] (Emphasis supplied.) *Village Centers, Inc. v. DeKalb County*, 248 Ga. 177, 178 (281 SE2d 522) (1981). See also *Palazzolo v. Rhode Island*, 533 U. S. 606, 620-621 (121 SC 2448, 150 LE2d 592) (2001) (as-applied challenge is not ripe for review until property owner has "followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property").

[7] See *Village of Euclid v. Ambler Realty Co.*, 272 U. S. 365, 385 (47 SC 114, 71 LE 303) (1926); *O.S. Advertising Co. of Ga. v. Rubin*, 263 Ga. 761 (438 SE2d 907) (1994), overruled on other grounds, *Ashkouti v. City of Suwanee*, 271 Ga. 154 (516 SE2d 785) (1999).

an "as-applied" challenge. Accordingly, appellants' taking challenge is properly before the Court.

3. (a) In order to succeed in their facial challenge, appellants must show that the "ordinance does not substantially advance legitimate state interests . . . or denies an owner economically viable use of his land."[8] The Supreme Court has noted the "uphill battle" faced by a party bringing such a challenge.[9] Appellants do not contend that the Tree Ordinance fails to substantially advance a legitimate state interest. Therefore, we focus on the second test — whether the ordinance deprives appellants of any economically viable use of their land.

Courts generally conclude that so long as an ordinance allows some permissible use, a party will not be able to satisfy its burden of showing a complete lack of economically viable use.[10] For example, in *Pope v. City of Atlanta*,[11] this Court held that the landowner had not demonstrated the existence of a taking where she was prevented from building a tennis court within a stream corridor because the land use regulation did "not deprive her of all her rights in the property." Similarly, the Tree Ordinance does not destroy appellants' ability to develop its land; it only regulates the way in which new and existing trees must be managed during the development process. Appellants have failed to show that the Tree Ordinance destroys its ability to develop land, and the trial court's finding that appellants have not been deprived of all economically viable use is not clearly erroneous.

While the Tree Ordinance may impose some additional costs and thus diminish the ultimate value of appellants' land, "[m]any regulations restrict the use of property, diminish its value or cut off certain property rights, but no compensation for the property owner is required."[12] Furthermore, the Tree Ordinance provides for special

---

[8] *Agins v. City of Tiburon*, 447 U. S. 255, 260 (100 SC 2138, 65 LE2d 106) (1980). See also *Pope v. City of Atlanta*, 242 Ga. 331, 334 (249 SE2d 16) (1978) (exercise of police power in land use regulations justified only if it is substantially related to public health, safety or general welfare).

[9] *Keystone Bituminous Coal Assn. v. DeBenedictis*, 480 U. S. 470, 495 (107 SC 1232, 94 LE2d 472) (1987).

[10] See *Hodel v. Virginia Surface Mining & Reclamation Assn.*, 452 U. S. 264, 296 (101 SC 2352, 69 LE2d 1) (1981); *Agins*, 447 U. S. at 262. See also *Rolleston v. State of Ga.*, 245 Ga. 576, 579-580 (266 SE2d 189) (1980) (land use regulation does not amount to a taking where owner "is not entirely deprived of the value and practical use of his property"). Compare *Lucas v. South Carolina Coastal Council*, 505 U. S. 1003 (112 SC 2886, 120 LE2d 798) (1992) (statute prevented any construction by requiring that owner's beachfront land be left in its natural state).

[11] 242 Ga. at 337 (considering as-applied challenge).

[12] *Pope*, 242 Ga. at 334. See also *Pennsylvania Coal Co. v. Mahon*, 260 U. S. 393, 413 (43 SC 158, 67 LE 322) (1922) ("Government could hardly go on if to some extent values incident to property could not be diminished without paying for every

exceptions and administrative appeals, which several courts have noted is sufficient to defeat a facial taking claim.[13]

(b) Appellants' reliance upon *Dolan v. City of Tigard*[14] is misplaced. In *Dolan*, the United States Supreme Court placed the burden of justifying a land-use determination on the local government and required a showing of "rough proportionality" between the taking and the legitimate state interests. *Dolan*, however, is inapposite because it was an as-applied challenge to a City's requirement that an owner deed portions of her land to the city.[15] In contrast, this case involves a facial challenge to a generally applicable land-use regulation. Additionally, in *Parking Assn. v. City of Atlanta*, we rejected applying *Dolan* in the context of an adjudicative decision rather than a legislative determination.[16] Accordingly, we do not undertake *Dolan*'s analysis.

(c) We need not dwell long on appellants' contention that a different analysis applies because each tree is a deedable piece of real property. The United States Supreme Court has characterized the approach appellants urge as "quite simply untenable"[17] because " '[t]aking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated."[18] Thus, in *Keystone Bituminous*, the Supreme Court rejected the argument that the takings analysis was altered by the fact that, under Pennsylvania law, the "support estate" is a separate interest in land that can be conveyed apart from any other interest.[19] Similarly, the takings analysis is not altered in this case by the fact that each tree may be considered a separate property interest.

---

such change in the general law.").

[13] See *Lake Nacimiento Ranch Co. v. County of San Luis Obispo*, 841 F2d 872, 877 (9th Cir. 1987) (where party can apply for variance, ordinance is not overly restrictive on its face); *Home Builders Assn. v. City of Napa*, 108 Cal. Rptr. 2d 60, 64 (Cal. App. 2001) (where city has ability to waive ordinance requirements, no facial taking exists).

[14] 512 U. S. 374 (114 SC 2309, 129 LE2d 304) (1994).

[15] Id. at 385 (distinguishing cases where regulation placed limitation on land use); *Garneau v. City of Seattle*, 147 F3d 802, 811 (9th Cir. 1998) (*Dolan* inapplicable to facial challenges).

[16] 264 Ga. 764, 766 n. 3 (450 SE2d 200) (1994) (*Dolan* inapplicable to legislative determinations); *Dolan*, 512 U. S. at 391 n. 8 (burden of proof different in cases involving adjudicative determinations).

[17] *Penn Central Transp. Co. v. New York City*, 438 U. S. 104, 130 (98 SC 2646, 57 LE2d 631) (1978).

[18] Id. See also *Andrus v. Allard*, 444 U. S. 51, 65-66 (100 SC 318, 62 LE2d 210) (1979) ("where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking").

[19] 480 U. S. at 500. See also *Dept. of Transp. v. Willis*, 165 Ga. App. 271 (299 SE2d 82) (1983) (in condemnation action, value of trees not considered separately from fair market value of land).

(d) Finally, appellants argue that the Tree Ordinance constitutes a taking because it renders commercial timber harvest impractical. Appellants, however, have presented no evidence that *any land* has been "taken" by the Ordinance's effect on the commercial timber harvest.[20] Furthermore, there is no evidence that the Ordinance has "taken" the livelihood of anyone who engages in commercial timbering.

Accordingly, we affirm the trial court's grant of summary judgment against appellants' takings claim.

## Due Process Claim

4. Appellants also contend that the Tree Ordinance violates due process by failing to provide ascertainable standards to guide the discretion granted to the County arborist in the tree protection plan approval process. This claim, however, is not ripe for review. Except in the context of protected First Amendment activity, a person seeking a permit will not be heard to complain that the regulation is vague until he has actually sought and been denied the permit.[21] This Court has similarly held that a party lacks standing unless he can show "that the allegedly unconstitutional feature of the statute . . . has infringed his rights."[22] In light of these bedrock principles, our consistent practice has been to address the sufficiency of standards to guide administrative discretion only in appeals stemming from the denial of a permit or license.[23] Because appellants cannot show any injury stemming from the allegedly vague provisions of the Tree Ordinance, these claims are premature.

## Preemption Claim

5. Appellants also assert that the Tree Ordinance as a whole is preempted by OCGA § 12-6-24, which relates to commercial timber harvesting. Pretermitting whether appellants, who do not engage in commercial timber harvesting, have standing to assert this challenge,[24] we conclude that the state law does not preempt the Tree

---

[20] See *Hodel*, 452 U. S. at 295 (takings claim fails where property owners have not identified any property in which they have an interest that has been taken by law's enactment); *Keystone*, 480 U. S. at 496 (rejecting facial claim where no evidence that appellants' mining operations have been unprofitable).

[21] *Bo Fancy Productions v. Rabun County Bd. of Comm'rs*, 267 Ga. 341, 344-345 (478 SE2d 373) (1996). See also *Adams v. Ga. Dept. of Corrections*, 274 Ga. 461, 462 (553 SE2d 798) (2001).

[22] *Love v. Whirlpool Corp.*, 264 Ga. 701, 705 (449 SE2d 602) (1994).

[23] See, e.g., *Suddeth v. Forsyth County*, 258 Ga. 773 (373 SE2d 746) (1988).

[24] *City of Atlanta v. S.W.A.N. Consulting & Security Svcs.*, 274 Ga. 277, 278 (553 SE2d 594) (2001) (company licensed under state law had standing to raise as-

Ordinance. The legislature amended OCGA § 12-6-24, effective June 3, 2003, to demonstrate its clear intent that it "shall not preclude counties . . . from enacting and enforcing tree ordinances."[25] The statute applies only to "timber harvesting operations which qualify as forestry land management practices or agricultural operations . . . not incidental to development, on tracts which are zoned for or used for forestry, silvicultural, or agricultural purposes."[26] Because the only regulations in the Tree Ordinance that relate to timber harvesting are incidental to development, there is no preemption.

### Criminal Liability

6. Finally, appellants contend that the Tree Ordinance is invalid because it imposes strict criminal liability. As recognized by the trial court, however, any party cited for a violation of the Tree Ordinance will have the opportunity in Recorder's Court to show why he has not violated its provisions. Therefore, no strict liability exists.

*Judgment affirmed. All the Justices concur, except Sears, P. J., and Carley, J., who dissent.*

CARLEY, Justice, dissenting.

I respectfully submit that the majority's efforts to uphold the DeKalb County Tree Ordinance repeatedly fall short, on both statutory and constitutional grounds. As the majority must and does recognize, the ordinance is "comprehensive," to say the least. Majority opinion, p. 295. However, the opinion does not include even a cursory review of the ordinance's requirements. The following summary of key provisions hopefully will remedy that omission, and will also demonstrate the draconian nature of the challenged ordinance:

The stated purposes of the ordinance broadly include the protection of the public health, safety, general welfare, and aesthetics of the County and all its citizens; the promotion of several environmental benefits for the citizens and their communities; the protection of specimen and historical trees; the prevention of the loss of mature trees and the ensuring of appropriate replanting; and, the enhancement of the quality of life in the County. Code of DeKalb County § 14-39 (a). Subject to certain exemptions, the ordinance conditions the issuance of every building or land development permit in DeKalb County on the submission of a tree survey and tree protection plan by the applicant, and approval of the plan by the County Arborist. Code, supra at § 14-39 (c), (e). It establishes the following tree preser-

---

applied preemption challenge to municipal ordinance that impacted license).

[25] OCGA § 12-6-24 (e) (3); Ga. Laws 2003, p. 578.

[26] OCGA § 12-6-24 (e) (4) (A); Ga. Laws 2003, p. 578.

vation and replacement requirements: The developer must preserve 120 inches DBH (diameter at breast height) per acre or 25 percent of healthy trees which exceed 8 inches DBH, unless the County Arborist determines that special constraints of a site would result in an inability to build. The developer may not count trees located in required buffer zones, except in four specified zoning classifications. Code, supra at § 14-39 (g) (1). Lots in certain districts must have at least one or two overstory trees with two inches DBH in the front yard, depending on the zoning classification. Code, supra at § 14-39 (g) (2). All residential subdivisions must have an average of 15 density units per acre. Code, supra at § 14-39 (g) (3) (a). Non-residential and multifamily developments must have a total of 30 density units per acre in existing and replacement trees. Code, supra at § 14-39 (g) (3) (b). All area within the 100-year floodplain must be excluded from that computation, except for four specified zoning classifications. Code, supra at § 14-39 (g) (3) (c). The calculation of density units is based on charts which differentiate between deciduous trees and evergreens and conifers. Code, supra at § 14-39 (g) (4). Tree relocation and removal of understory vegetation from tree preservation areas are subject to the approval of the County Arborist. Code, supra at § 14-39 (g) (6), (7). The Arborist is to identify specimen trees, as defined in the Code, which are in fair or better condition, and may require the preservation of tree stands with interlocking specimen trees. Code, supra at § 14-39 (g) (8) (a), (b), (c). Such trees may not be cut without the Arborist's approval or a special exception, and then must be replaced by 1.5 times the equivalent DBH using species which will have comparable growth and quality at maturity. Code, supra at § 14-39 (g) (8) (d), (e). Trees to be preserved must have four-foot orange tree protection fencing installed at the critical root zones. Code, supra at § 14-39 (g) (9) (a). Negligently damaged trees must be replaced with four-inch caliper trees (diameter at six inches above the ground) which equal the unit value of the damaged trees. In the case of a specimen tree, the replacement trees must equal 1.5 times the DBH of the damaged tree. Code, supra at § 14-39 (g) (9) (d). Trees in the 100-year floodplain or required stream buffer may not be cut or counted towards the tree protection requirements, except for the four specified zoning classifications. Code, supra at § 14-39 (g) (10) (d). At least 50 percent of replacement trees must be overstory trees, and no more than 25 percent may be of any single species or of any evergreen species. Code, supra at § 14-39 (h) (1). If the County Arborist determines that special constraints of a site result in an inability to provide the required tree density, the developer may re-landscape with the maximum possible number of trees, as determined by the Arborist. Code, supra at § 14-39 (m). Selective tree harvesting in consultation with the Arborist is permitted so long as

there is a 75-foot undisturbed buffer around the entire perimeter, up to 25 percent of the total land area, and ultimately 30 density units per acre, excluding the buffer. Code, supra at § 14-39 (n).

1. The above brief review of the tree ordinance which is the subject of this case reveals that the Court's opinion has erroneously minimized the references to zones or districts. Although the majority finds only three references to zoning, I submit that there are actually at least five. More importantly, the primary substantive provisions of the ordinance, which specify where trees are to be saved and what densities are required upon completion of a project, depend on several different combinations of existing zoning classifications. That is precisely what made the sign ordinance in *City of Walnut Grove v. Questco*, 275 Ga. 266, 267 (1), fn. 1 (564 SE2d 445) (2002) a zoning ordinance as defined by the Zoning Procedures Law (ZPL). OCGA § 36-66-3 (5). The tree ordinance was "drafted in such a manner as to regulate the uses and development standards of property . . . by means of zones or districts. [Cit.]" *City of Walnut Grove v. Questco*, supra at 267 (1). It divides the County "into districts (specifically, the existing zoning districts)" and regulates the preservation and planting of trees relative to the districts in which the trees are located. *City of Walnut Grove v. Questco*, supra. The general application of the more procedural requirements of the tree ordinance to all zones or districts does not make it any less a zoning ordinance than do the numerous general, procedural provisions of a traditional zoning ordinance. See *City of Walnut Grove v. Questco*, supra. The ZPL applies to the adoption of, or text amendment to, every "zoning ordinance." OCGA § 36-66-3 (4) (B); *Atlanta Bio-Med v. DeKalb County*, 261 Ga. 594, 596 (2) (408 SE2d 100) (1991). Since the tree ordinance is a zoning ordinance, the ZPL clearly applies to its enactment and to the adoption of subsequent amendments. Because ZPL procedures are mandatory, non-compliance with them in adopting and revising the tree ordinance renders that ordinance void. *Tilley Properties v. Bartow County*, 261 Ga. 153, 154-155 (1) (401 SE2d 527) (1991). See also *Atlanta Bio-Med v. DeKalb County*, supra at 596 (2).

2. Even conceding for the sake of argument that compliance with the ZPL was not necessary, and that, therefore, the constitutional challenges must be reached, the tree ordinance still cannot stand, because it results in a taking of property without just compensation.

"One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' [Cit.]" *Dolan v. City of Tigard*, 512 U. S. 374, 384 (II) (114 SC 2309, 129 LE2d 304) (1994). In accomplishing this purpose, the Supreme Court of the United States has recognized several different general categories of takings claims. *Town of Flower Mound v. Staf-*

*ford Estates Ltd. Partnership*, 71 SW3d 18, 29 (VI) (A) (Tex. App. 2002) (citing *Dolan*). A distinct category of "takings may occur when the government conditions the granting of permit approval, plat approval, or some other type of governmental approval on an exaction from the approval-seeking landowner. [Cits.]" *Town of Flower Mound v. Stafford Estates Ltd. Partnership*, supra at 30 (VI) (A). An exaction is "governed by the standards discussed by the Supreme Court in *Dolan*. . . ." *City of Annapolis v. Waterman*, 745 A2d 1000, 1012 (II) (Md. 2000). "If the taking is an exaction, it is an actual taking and whether remaining viable economic use exists is irrelevant." *City of Annapolis v. Waterman*, supra at 1013 (II). Compare *City of Monterey v. Del Monte Dunes at Monterey*, 526 U. S. 687, 702 (II) (119 SC 1624, 143 LE2d 882) (1999). Thus, if the tree ordinance here constitutes an exaction, then evaluation of its constitutionality by the *Dolan* test is mandatory. "Any exaction, no matter how small or large, must comply with the rough proportionality standard of *Dolan*." *City of Annapolis v. Waterman*, supra at 1013 (II), fn. 11.

"Generally, any requirement that a developer provide or do something as a condition to receiving municipal approval is an exaction. [Cit.]" *Town of Flower Mound v. Stafford Estates Ltd. Partnership*, supra at 30 (VI) (A), fn. 7.

> In an exaction takings case, the landowner is not simply denied or restricted in some desired use of his property. Rather, in an exaction takings case, some action — the exaction — is required of the landowner as a condition to obtaining governmental approval. . . . The *Dolan* two-part test is required in exaction cases to prevent opportunistic takings by the government simply because a landowner is seeking some type of land-related governmental approval.

*Town of Flower Mound v. Stafford Estates Ltd. Partnership*, supra at 30 (VI) (A). As numerous courts have held, *Dolan* applies even to development exactions which do not involve the dedication of real property. *Town of Flower Mound v. Stafford Estates Ltd. Partnership*, supra at 31-34 (VI) (B). Compare *City of Monterey v. Del Monte Dunes at Monterey*, supra. Although a tree ordinance such as the one challenged in this case "is not directly analogous to an actual dedication of property, it raises similar enough limitations on a landowner's use to postulate application of Dolan's rough proportionality test. . . ." Comment, Afforestation under Maryland's Forest Conservation Act and Selected County Codes: Viability of this Land Use Regulation pre- and post-Dolan v. City of Tigard, 4 U. Balt. J. Envtl. L. 53, 83 (III) (C) (4) (b) (1) (1995). The fact that the public is to benefit from the tree ordinance implicates *Dolan*. *Dudek v. Umatilla County*, 69

P3d 751, 757 (Or. App. 2003).

The majority relies on *Parking Assn. of Ga. v. City of Atlanta*, 264 Ga. 764, 766 (2), fn. 3 (450 SE2d 200) (1994) to hold that *Dolan* is inapplicable to legislative determinations. However, *Parking Assn.* clearly did not involve an exaction. Holloway & Guy, A Limitation on Development Impact Exactions to Limit Social Policy-Making: Interpreting the Takings Clause to Limit Land Use Policy-Making for Social Welfare Goals of Urban Communities, 9 Dick. J. Envtl. L. & Policy 1, 77 (V) (C), fn. 373 (2000). Moreover, as in *Dudek v. Umatilla County*, supra at 755, the legislative character of the ordinance in *Parking Assn.* was only one factor in the taking analysis there. Also pertinent under *Dudek v. Umatilla County*, supra at 755, 756, is whether the specific conditions that must be imposed under the ordinance require an assessment of the particular circumstances and an exercise of discretion. As illustrated above, the tree ordinance here requires a significant exercise of discretion, primarily by the County Arborist, in several instances.

Furthermore, no consensus has emerged in other courts on the issue of *Dolan*'s application to legislative determinations. *Rogers Machinery v. Washington County*, 45 P3d 966, 976 (III) (B) (Or. App. 2002); *Town of Flower Mound v. Stafford Estates Ltd. Partnership*, supra at 34 (VI) (C). The only two Justices of the Supreme Court to express an opinion thus far make a compelling case that *Dolan* applies beyond strictly adjudicatory decisions:

> It is not clear why the existence of a taking should turn on the type of governmental entity that is responsible for the taking. A city council can take property just as well as a planning commission can. Moreover, the general applicability of the ordinance should not be relevant in a takings analysis. If Atlanta had seized several hundred homes in order to build a freeway, there would be no doubt that Atlanta had taken property. The distinction between sweeping legislative takings and particularized administrative takings appears to be a distinction without a constitutional difference.

*Parking Assn. of Ga. v. City of Atlanta*, 515 U. S. 1116, 1117-1118 (115 SC 2268, 132 LE2d 273) (1995) (Thomas, J., joined by O'Connor, J., dissenting to the denial of certiorari). "[I]t is 'prohibitively difficult and unrealistic to draw a line between legislative and adjudicative decisions[.]'" *Town of Flower Mound v. Stafford Estates Ltd. Partnership*, supra at 34 (VI) (C) (quoting Inna Reznik, The Distinction Between Legislative and Adjudicative Decisions in Dolan v. City of Tigard, 75 N.Y.U. L. Rev. 242, 264, 267 (2000)).

Therefore, like commentators who have considered similar ordi-

nances, I can only conclude that tree preservation schemes which condition development upon the maintenance, replacement, or other planting of trees are exactions which must be analyzed as in *Dolan*. Note, Tree Preservation Methods: Zoning Regulation vs. Conservation Servitude, 14 J. Nat. Resources & Envtl. L. 253, 264 (II) (E) (1) (b) (2000); Comment, supra at 76 (III) (C) (4) (a). See also The Manoa Valley Special District Ordinance: Community-Based Planning in the post-Dolan Era, 19 U. Haw. L. Rev. 449, 474 (IV) (C) (2), fn. 186 (1997).

The majority asserts that *Dolan* does not apply to "a facial challenge to a generally applicable land-use regulation." Majority opinion, p. 298. The opinion cites *Garneau v. City of Seattle*, 147 F3d 802, 811 (III) (B) (1) (9th Cir. 1998), which is not surprising because it is the *only* authority I have found for this proposition.

> [H]owever, there is no majority opinion in *Garneau*, so the case is of limited precedential value. If *Garneau* is correct, then the "rough proportionality" test would not apply here — but there is no indication of what other test should then be applied instead.

*Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 34 FSupp. 2d 1226, 1239 (I) (A) (D. Nev. 1999), aff'd in part, rev'd in part on other grounds, 216 F3d 764 (9th Cir. 2000), aff'd, 535 U. S. 302 (122 SC 1465, 152 LE2d 517) (2002). Furthermore, *Garneau* relies on a case involving a prohibition on all beneficial use of the property, and not an exaction. *Garneau v. City of Seattle*, supra. More importantly, this Court has never held, as did *Garneau*, that " '[a] facial challenge involves a claim that the mere enactment of a statute constitutes a taking. . . .' [Cit.]" *Garneau v. City of Seattle*, supra at 811 (III) (B) (1). Instead, we have construed the latest Supreme Court precedent such "that a facial attack on a statute will be upheld if the statute operates unconstitutionally in a large fraction of the cases in which it applies. [Cits.]" *State of Ga. v. Jackson*, 269 Ga. 308, 311-312 (1) (496 SE2d 912) (1998).

In evaluating the takings claim, we must first determine whether an " 'essential nexus' exists between the 'legitimate state interest' and the permit condition exacted by the [County]." *Dolan v. City of Tigard*, supra at 386 (III). "[M]andatory reforestation requirements absent some [specific environmental] supporting documentation raise some significant legal questions under the . . . nexus test." 2 Rathkopf's The Law of Zoning and Planning § 20:67 (4), p. 20-90 (2002). The tree ordinance here clearly fails the first prong of the *Dolan* test to the extent that a developer is automatically required to plant trees despite the prior absence of any trees on the property.

Such is the case with regard to the ordinance's provisions for front-yard trees and minimum densities for residential developments. Code, supra at § 14-39 (g) (2), (3) (a). At least in those instances, the permit condition does not serve the same governmental purpose of tree preservation as would a ban on the development, and the "restriction is not a valid regulation of land use but 'an out-and-out plan of extortion.' [Cits.]" *Nollan v. Cal. Coastal Comm.*, 483 U. S. 825, 837 (II) (107 SC 3141, 97 LE2d 677) (1987).

Under the second prong of the *Dolan* analysis, there must be an individualized determination that the required exaction is roughly proportional to the nature and extent of the impact of the proposed development. *Dolan v. City of Tigard*, supra at 388-391 (III) (B). *Dolan* is not satisfied simply by a legislature's assertion that its tree preservation requirements will offset problems caused by development. Comment, supra at 84 (III) (C) (4) (b) (2). "[I]f mitigation requirements demand that trees be replaced with a significantly greater number of similarly sized specimens, they become increasingly suspect." 2 Rathkopf's, supra at § 20:67 (1), p. 20-90. The tree ordinance here requires replacement of any specimen trees which must be cut with 50 percent greater DBH, regardless of the nature and extent of the impact of the cutting. Code, supra at § 14-39 (g) (8) (e), (9) (d). The ordinance excludes from its computations trees in required buffers and in the 100-year floodplain in many developments, but not in others, without a finding that the developments have differing impacts. Code, supra at § 14-39 (g) (1), (10) (d). Likewise, the buffer for timber harvesting is not tied to its impact. Code, supra at § 14-39 (n). The species requirements for replacement trees apply regardless of the previous species and, thus, are obviously unrelated to the impact of necessary cutting. Code, supra at § 14-39 (h) (1). In each of these instances, the requisite rough proportionality is not apparent, nor does the tree ordinance provide for an individualized determination of that proportionality. Accordingly, the ordinance is so deficient that an unconstitutional taking in violation of *Dolan* will occur in "a large fraction" of cases. See *State of Ga. v. Jackson*, supra.

3. When confronted with Appellants' facial due process claim, the majority ignores its prior concession that "[f]acial challenges . . . have no ripeness requirement. [Cits.]" Majority opinion, p. 296. On its face, the tree ordinance requires the County Arborist to make numerous discretionary determinations, including the appropriateness of tree relocation, whether special constraints result in an inability to build with the required tree density, what is undesirable groundcover, exceptional aesthetic quality, negligence in damaging a tree, when specimen trees may be cut, and appropriate access points for timber harvesting. Code, supra at § 14-39 (g) (6), (7), (8) (b) (iii),

(8) (d), (9) (d), (m), (n) (1). These requirements do not contain definitions or other objective and ascertainable standards to govern the exercise of the Arborist's discretion. *Hixon v. Walker County*, 266 Ga. 641, 642 (468 SE2d 744) (1996). See also *Pinellas County v. Jasmine Plaza*, 334 S2d 639 (Fla. App. 1976). That unguided discretion would clearly come into play in at least "a large fraction" of cases. See *State of Ga. v. Jackson*, supra.

4. The majority seriously misreads the tree ordinance in holding that because it relates only to timber harvesting which is incidental to development it is not preempted by OCGA § 12-6-24. To the contrary, the ordinance regulates all tree harvesting, regardless of whether it is incidental to development. Code, supra at § 14-39 (n). The only mention of development is a prohibition thereof for five years if it would require the cutting of trees preserved by the regulations. Code, supra at § 14-39 (n) (6).

"[S]tate law may preempt local law expressly, by implication, or by conflict. [Cit.]" *Franklin County v. Fieldale Farms Corp.*, 270 Ga. 272, 274 (1) (507 SE2d 460) (1998). Even if general law authorizes the local government to act, the local ordinance may not conflict with general laws. *Franklin County v. Fieldale Farms Corp.*, supra at 275 (2). OCGA § 12-6-24 (e) (2) expressly forbids any local government from requiring any permit for timber harvesting. Yet the tree ordinance specifically requires such permits. Code, supra at § 14-39 (n). See *Franklin County v. Fieldale Farms Corp.*, supra at 278 (4) (where the county "sought to establish a duplicate permit system that is not authorized by general law"). Thus, the ordinance obviously conflicts with state law.

5. This dissenting opinion is not intended to suggest that it is impossible for tree preservation ordinances to pass statutory and constitutional muster. The commentators which I have cited indicate that local governments have successfully utilized a variety of methods for protecting the arboreal resources within their respective jurisdictions. However, those methods must be chosen with scrupulous attention to the statutory and constitutional rights of property owners. As the Supreme Court of the United States stated in the takings context, a " 'strong public desire to improve public condition (will not) warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.' [Cit.]" *Dolan v. City of Tigard*, supra at 396 (IV). I am compelled to dissent to today's approval of this particular tree ordinance because it constitutes an unwarranted and egregious short cut which imposes long-term costs on property owners while violating their constitutional rights to just compensation and due process, and ignoring the procedural safeguards established by the General Assembly.

I am authorized to state that Presiding Justice Sears joins in

Division 1 of this dissent.

DECIDED NOVEMBER 10, 2003.

Smith, Gambrell & Russell, Kathryn M. Zickert, Brian E. Daughdrill, for appellants.

Charles G. Hicks, William J. Linkous III, Jenkins & Olson, Frank E. Jenkins III, Peter R. Olson, Brandon L. Bowen, for appellees.