**SECOND DIVISION
MILLER, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 20, 2021**

# In the Court of Appeals of Georgia

A21A0168. D. ROSE, INC. et al v. CITY OF ATLANTA et al.

MILLER, Presiding Judge.

This case concerns a 1.17-acre property in a residential area bordering Peachtree Creek in Atlanta. After D. Rose, Inc. and its sole shareholder, Damon Rose, (collectively "Rose") purchased the property, the City of Atlanta denied its request for a variance, which prohibits it from developing the property. Rose filed the instant action for inverse condemnation, claiming that the City's setback requirements in its zoning code have effectively deprived it of all economic use of the property. After the trial court granted summary judgment to the City, Rose now appeals and argues that genuine issues of material fact remain on its inverse condemnation claim and that summary judgment was improper on its claim for attorney fees. We conclude that (1) the City's zoning regulations by themselves did not deprive Rose of all use of its

property, and (2) no genuine issues of material fact remain on Rose's derivative attorney fees claim. Therefore, we affirm the grant of summary judgment.

> Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *City of Tybee Island v. Live Oak Group, LLC*, 324 Ga. App. 476, 477 (751 SE2d 123) (2013).

The record shows that Rose purchased the relevant property in 2017. The property was initially much larger and had been subdivided into its current form in the 1980s. The zoning regulations for the property require a 60-foot setback for the front yard. The property in question is also encumbered by a 100-year floodplain and several sewer easements and sewer lines, which prevents building on the rear 2/3 of the property. According to Rose, the City's strict application of the front yard setback therefore renders the property "completely undevelopable and worthless."

In 2016, Rose assisted the property's then-owners in applying for a variance from the zoning setback requirement. The City denied the variance application. Nonetheless, Rose still purchased the property, but paid only $50,000 when the

property was previously listed for $175,000. Rose filed a second application for a variance in 2017, which was again denied by the City.

Rose then filed a petition for certiorari in the superior court, challenging the denial of its 2017 variance application and asserting a claim for inverse condemnation. Rose later amended the complaint and added a claim for attorney fees under OCGA § 13-6-11. The trial court upheld the City's decision to deny the variance and denied Rose a writ of certiorari, but it determined that it would consider Rose's claim for inverse condemnation. Rose does not directly challenge the ruling upholding the denial of the variance and denying a writ of certiorari in this appeal.

The City moved for summary judgment on the inverse condemnation claim. Following a hearing, the superior court granted summary judgment to the City. The trial court first concluded that the City's denial of Rose's request for a variance was not a taking and therefore it could not form the basis of a proper inverse condemnation claim. The trial court further concluded that the City's setback regulations themselves did not provide Rose with a valid inverse condemnation claim because the property was undevelopable due to the natural flood and waterway characteristics burdening the land as well as the predecessor's decision to subdivide the property. The trial court additionally concluded that Rose's challenge to the

3

zoning setback regulations sounded more in the nature of a due process claim rather than an inverse condemnation claim, but Rose did not raise a due process claim to challenge the regulations. The trial court also granted summary judgment on Rose's request for attorney fees because its substantive claims failed. We then granted Rose's application for discretionary appeal.[1]

1. In two related enumerations of error, Rose argues that the trial court erred by granting summary judgment on its inverse condemnation claim because the City's setback regulation has effectively deprived it of all economic use of the land.[2] Specifically, Rose asserts that the 60-foot setback makes it impossible for him to build a single family home on the property, and that the City deliberately imposed the 60-foot setback to keep the property undeveloped for a public purpose. An analysis of the proper law shows that these claims must fail.

"Inverse condemnation claims draw their meaning and remedies from the eminent domain provisions in the Fifth Amendment of the United States Constitution

---

[1] See *Clay v. Douglasville-Douglas County Water & Sewer Auth.*, 357 Ga. App. 434, 437-440 (1) (c) (848 SE2d 733) (2020).

[2] On appeal, Rose only contends that the City's setback regulation itself constituted a taking, and it does not argue that the City's denial of its variance request was erroneous or a taking.

4

and Article I, Section III, Paragraph I of the Georgia Constitution, each of which protects against uncompensated 'takings.'" *Diversified Holdings, LLP v. City of Suwanee*, 302 Ga. 597, 605 (III) (807 SE2d 876) (2017). "But, as the United States Supreme Court has appropriately noted, the question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty." (Citation and punctuation omitted.) Id.[3]

> [T]wo categories of regulatory action will be deemed per se takings. First is the permanent physical infringement of property. The second is where a regulation deprives the property owner of 'all economically beneficial uses.' Cases that fall outside these two categories have been analyzed according to the factors set out in *Penn Central*,[4] including the 'economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.' *Penn Central* also describes the importance of the 'character of the governmental action' in the analysis, noting that an act is more likely to be considered a taking when it constitutes a physical invasion rather than 'when interference arises

---

[3] Georgia courts have frequently used federal law (particularly precedent from the United States Supreme Court) to assist us when analyzing taking and inverse condemnation actions. See, e.g., *Mann v. Ga. Dept. of Corrections*, 282 Ga. 754 (653 SE2d 740) (2007).

[4] *Penn Central Transp. Co. v. City of New York*, 438 U. S. 104 (98 SCt 2646, 57 LE2d 631) (1978).

from some public program adjusting the benefits and burdens of economic life to promote the common good.'

(Citations and emphasis omitted.) Id. at 607 (III). The Supreme Court of Georgia has also said that "government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and [such] regulatory takings may be compensable." (Citation and punctuation omitted.) *Mann v. Ga. Dept. of Corrections*, 282 Ga. 754, 757 (1) (653 SE2d 740) (2007). "The focus of the takings analysis is on whether the government act takes property, not on whether the government has a good or bad reason for its action." (Citation omitted.) *Diversified Holdings, LLP*, supra, 302 Ga. at 609-610 (III).

Thus, the Supreme Court of Georgia has held that an inverse condemnation claim is an available remedy from an allegedly improper zoning classification *if* "the landowner can meet the separate and distinct requirements for such a claim." *Diversified Holdings, LLP*, supra, 302 Ga. at 597. The Court, however, acknowledged that "zoning is unlikely to be a fertile ground for inverse condemnation claims." Id. at 610 (III). "Zoning, in short, does not ordinarily present the kind of affirmative public use at the expense of the property owner that effects a taking, and we have previously recognized as much. . . [and] we have identified no zoning case where the

6

party claiming inverse condemnation received a 'takings' remedy, that is, financial damages to compensate for the loss of their property." Id. at 610-611 (III).[5]

(a) Rose's primary contention is that the City has committed an inverse condemnation under the second per se taking provision, namely that the zoning restrictions at issue have deprived it of all economic use of the property. Rose argues at length that there is a fact dispute as to whether the lot would be buildable if the zoning variance was granted because it submitted a surveyor's report which determined that a home could be built on the lot if the variance was granted, even if the easements and sewer lines were not moved. We cannot agree.

We start by noting that the United States Supreme Court has emphasized that "we must focus on the parcel [of property] as a whole" when analyzing whether a regulatory taking has occurred. (Citation and punctuation omitted.) *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U. S. 302, 327 (IV) (122 SCt 1465, 152 LE2d 517) (2002). Indeed, both Georgia courts and the United States Supreme Court have specifically rejected attempts to "disaggregate" or divide parcels to determine whether or not a total regulatory taking has occurred. See

---

[5] The Georgia Supreme Court made clear in *Diversified Holdings* that the preferred vehicle to challenge a zoning decision is through a substantive due process claim, see id. at 610-611 (III), a claim which Rose did not raise in this action.

7

*Greater Atlanta Homebuilders Assn. v. DeKalb County*, 277 Ga. 295, 298 (3) (c) (588 SE2d 694) (2003) ("[T]aking jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated.") (citation and punctuation omitted). See also *Tahoe-Sierra Preservation Council, Inc.*, supra, 535 U. S. at 321-332 (IV) (regulation imposing a temporary moratorium on all building did not constitute a total taking because such a temporary restriction did not deprive the property of *all* value and uses when uses could be made in the future); *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U. S. 602, 644 (IV) (B) (113 SCt 2264, 124 L.Ed.2d 539) (1993) ("To the extent that any portion of property is taken, that portion is always taken in its entirety; the relevant question, however, is whether the property taken is all, or only a portion of, the parcel in question").

In light of this standard, Rose's contention that he has suffered a total taking of his property due to the setback restriction must fail. The setback restriction itself only prevents him from building on the portion of the property that is within 60 feet of the road. Instead, it is the encumbrances for the 100-year floodplain and several sewer easements and sewer lines that prevent him from building on the remainder of the property. While the setback requirement together with these other encumbrances

may effectively deprive him of all use of the property, the setback requirement is not, *by itself*, the reason that *all* of the value of the property's beneficial economic use has been depleted. "[T]aking jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *Greater Atlanta Homebuilders Assn.*, supra, 277 Ga. at 298 (3) (c). Compare *Lucas v. South Carolina Coastal Council*, 505 U. S. 1003, 1020-1032 (III) (B) (112 SCt 2886) (1992) (property owner had a valid takings claim when the State enacted a complete ban of construction on the entirety of the owner's property, thereby depriving it of all economic value). Because we are required to view the parcel as a whole, however, it is immaterial for a regulatory takings analysis whether or not this is the case because the setback requirement does not prevent Rose from building on the entirety of the property. See, e.g., *Penn Central Transp. Co.*, supra, 438 U. S. at 133 (II) (B) ("It is, of course, true that the Landmarks Law has a more severe impact on some landowners than on others, but that in itself does not mean that the law effects a 'taking.' Legislation designed to promote the general welfare commonly burdens some more than others.").

Thus, the trial court was correct to determine that the City's zoning restriction is not a total taking that would categorically entitle Rose to compensation.[6]

(b) Rose further argues that it presented evidence showing the City denied it a variance specifically to prevent it from building on the property as a part of the City's Greenway Project to have more "green space" in the City, which it argues is evidence showing that the City denied it a variance so that the City could effectively use its property for a public purpose. As stated previously, however, the trial court upheld the denial of Rose's variance request and denied it a writ of certiorari, and Rose does not challenge that decision on appeal. Moreover, as noted above, the setback regulation only applies to part of Rose's property, not all, and so it still would not support a regulatory takings claim. Thus, this claim also does not present grounds to survive summary judgment.

Because Rose has not shown that it suffered a regulatory taking of its property, the trial court properly granted summary judgment on Rose's inverse condemnation claim.

---

[6] We note that Rose does not argue that the setback constituted a partial taking under the *Penn Central* balancing test. See generally *Mann*, supra, 282 Ga. at 755-761 (1) (applying the *Penn Central* test to analyze whether a statutory provision restricting where convicted sex offenders could live constituted a regulatory taking).

2. In its final enumeration of error, Rose argues that it properly stated a derivative claim for attorney fees and costs under OCGA § 13-6-11. Because the trial court correctly granted summary judgment on Rose's substantive claim for inverse condemnation, this claim necessarily fails. *Sparra v. Deutsche Bank Nat. Trust Co.*, 336 Ga. App. 418, 423 (1) (f) (785 SE2d 78) (2016).

In conclusion, Rose did not suffer a total regulatory taking because the zoning setback restriction did not *by itself* prevent it from building on all of its land, and its derivative claim for attorney fees also necessarily fails. Therefore, we affirm the trial court's grant of summary judgment.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*