[No. 12682.    In Bank. — March 12, 1889.]

## P. CALLAHAN, RESPONDENT, *v.* JOHN P. DUNN, STATE CONTROLLER, APPELLANT.

CONSTRUCTION OF ACT OF 1885 PROVIDING FOR PAYMENT OF CLAIMS UNDER THE " ACT TO PROMOTE DRAINAGE."—Where the title to real property sought to be condemned by eminent domain proceedings has not passed, it is not "materials furnished" within the meaning of the third section of the above act, and the owner has no claim.

EMINENT DOMAIN — WHEN TITLE TO CONDEMNED PROPERTY PASSES.—Where the preliminary order of condemnation has been made, but the money awarded by it has not been paid, and the final order of condemnation has not been made, the title does not pass.

APPEAL from a judgment of the Superior Court of Sacramento County.

The facts are stated in the opinion.

*Attorney-General Johnson,* for Appellant.

*J. H. Craddock,* for Respondent.

HAYNE, C. — This was an application for *mandamus* to he state controller to compel him to draw his warrant in favor of the plaintiff for the sum of $1,618. Final judgment was rendered in plaintiff's favor upon demurrer to the complaint, and the defendant appeals.

The basis of the claim is a judgment of condemnation of plaintiff's land for the use of drainage district number 1, established by the "Act to promote drainage," passed in 1880. (See Laws 1880, p. 123.) It is alleged that by the judgment it was adjudged that the land should be condemned, and that plaintiff should recover therefor the sum of $1,618; that there was in the treasury sufficient money to the credit of said drainage district "applicable to the payment of its judgment debts, including the judgment debt of this plaintiff"; that plaintiff presented "his said judgment claim" to the state board of examiners, who allowed it, but that the controller refuses to draw a warrant "for said judgment claim."

The act of 1880 referred to in the complaint was declared unconstitutional in *People* v. *Parks*, 58 Cal. 625. It is evident, therefore, that plaintiff's claim is of no validity unless it be validated by subsequent legislation. It is contended that such legislation is to be found in the act of 1885. (See Laws, p. 78.) And hence it is plain that in order to entitle plaintiff to any relief, his case must fall within the latter act.

The act of 1885 was passed for the purpose of making provision for the payment of claims which had arisen under the first act. It deals with three classes of cases. The first section provides that the treasurer shall pay all warrants *which had already been drawn.* The second section provides that the controller shall draw warrants for all claims *which had already been allowed* by the board of drainage directors constituted by the first act, and that the treasurer should pay such warrants. The third section provides for the auditing and payment of unaudited claims. If the case of the plaintiff comes within the act at all, it must come within the third section, which is as follows:—

"Sec. 3. All persons having claims unaudited by the state board of drainage directors, for work done or mate-

rials furnished under the provisions of 'An act to promote drainage,' approved April 23, 1880, are authorized to present their claims to the state board of examiners. All claims so presented shall be itemized and verified by the claimant, his heirs or assigns. The state board of examiners shall audit and allow said claims, either in whole or in part, or reject the whole, as they may deem just and proper, and certify the amount so allowed to the state controller, who shall draw his warrant in favor of each claimant for the said amounts upon the state treasury. The state treasurer is authorized and required to pay the same out of any money in the general fund not otherwise appropriated; provided, that unaudited claims of ten thousand dollars only shall be allowed by the provisions of this section."

We do not think that the complaint states a case within this provision. Whatever may be the nature and validity of the discretion confided to the board of examiners, they are certainly confined within the limits fixed by the provision under which they are to act. And by the terms of that provision they are empowered to act upon claims "*for work done and materials furnished* under the provisions of 'An act to promote drainage.'" If the claims are not of that character, the board has no power to act upon them. The claim here was for compensation for land condemned for the use of the drainage district. And we are somewhat inclined to doubt whether such land can be held to be "materials" within the meaning of the provision. But assuming that it may be so considered, we do not think that under the averments of the complaint it can be said to have been "furnished" to the drainage district. It is true that a judgment is alleged to have been rendered for its condemnation. But the money was not paid for it, and the final order of condemnation is not alleged to have been made or recorded. Consequently the title did not vest in the district. The act of 1880 provided that the

condemnation proceedings should be had under the provisions of the Code of Civil Procedure. And the provision of the code is as follows:—

"Sec. 1253. *When payments have been made* and the bond given, if the plaintiff elects to give one, as required by the last two sections, *the court must make a final order of condemnation,* which must describe the property condemned and the purposes of such condemnation. *A copy of the order must be filed in the office of the recorder* of the county, *and thereupon the property described therein shall vest in the plaintiff* for the purposes therein specified."

Now, whether or not the making and recording of a "final order" of condemnation are necessary to the vesting of the title, it certainly does not vest before the payment is made, which the complaint shows was not done. The title to the property, therefore, never passed to the drainage district. And it can never pass, because, according to the plaintiff's own averment, "the corporate existence of said drainage district number 1 was determined and dissolved, *whereby all proceedings by or against said corporation under the act aforesaid ceased.*" This being the case, is the plaintiff, who has never parted with his property, entitled to payment for it out of the state treasury? We think that inasmuch as he has never parted with his property he cannot be said to have "furnished" it to the drainage district.

It is to be observed that the judgment upon which the plaintiff bases his claim is not alleged to have been for damages to his property. The constitution provides that "private property shall not be taken *or damaged* for public use without compensation." And if it had appeared that the judgment was for damages actually sustained by the property from some act of the alleged corporation, it is possible that a different result would follow, although we express no opinion as to that. But it is not averred that the judgment was of that character.

The allegation that the sum recovered was "as compensation *for* the *property* condemned and taken, and as damages for the injury *thereby* done to his property *not taken*," evidently refers to an injury which would result to the remainder of plaintiff's tract from the segregation of a portion. But if there is no segregation, the damage would evidently not accrue."

It is to be further observed that we are not saying that the vesting of the title is the only meaning of the word "taken" in the eminent domain clause of the constitution. That was at one time held. (See *Fox* v. *W. P. R. R. Co.*, 31 Cal. 538.) But the position was receded from, and it was held that "the occupation of land by the corporation for its own purposes pending the proceedings for condemnation is a taking of the property within the meaning of the constitution." (*Davis* v. *San Lorenzo R. R. Co.*, 47 Cal. 523; *San Mateo Water Works* v. *Sharpstein*, 50 Cal. 284; *Sanborn* v. *Belden*, 51 Cal. 266; *Vilhac* v. *S. & I. R. R. Co.*, 53 Cal. 208.) And if it had been alleged that the judgment was for such occupation, it is possible that a different case would be presented, although we express no opinion upon the question.

But as we construe the complaint, the compensation awarded by the judgment upon which the claim is based was for the land itself, and for the damages which would result from a segregation. And if the value of an occupation entered into the question at all, it was at most only a part of the compensation awarded. And even upon that hypothesis the claim for the whole judgment could not be sustained.

The other allegations of the complaint do not, in our opinion, interfere with the conclusions above expressed.

We therefore advise that the judgment be reversed, with directions to sustain the demurrer to the complaint.

FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is reversed, with directions to sustain the demurrer to the complaint.