LEA *v.* LOUISVILLE & N. R. Co. *et al.*

(*Nashville.* December Term, 1915.)

1. EMINENT DOMAIN. Highways. Use for other public pur-
poses. Underground pipes.

Laying water pipes under a county highway creates an addi-
tional servitude upon the fee interest, for which the abutting
owner may recover, notwithstanding the county has consented
to such action so far as its easement in the surface is con-
cerned. (*Post, pp.* 568-571.)

Acts cited and construed: Acts 1907, ch. 254.

2. CONSTITUTIONAL LAW.. Eminent domain. Class legislation.
Discrimination against particular corporations.

Acts 1907, ch. 254, authorizing any railroad company, now or here-
after owning or operating a railroad to condemn for reservoir
purposes, etc., does not violate Const. art. 11, sec. 8, or Const.
U. S. Amend. 14, sec. 1, prohibiting class legislation, although
it does not confer the same right upon new railroad companies
until they own or operate a railroad. (*Post, p.* 571.)

Cases cited and approved: Stratton v. Morris, 89 Tenn., 497;
Dugger v. Ins. Co., 95 Tenn., 245; Harbison v. Iron Co., 103
Tenn., 421; Condon v. Maloney, 108 Tenn., 82; Scott v. Marley.
124 Tenn., 388.

Constitution cited and construed: Art. 11, sec. 8.

3. EMINENT DOMAIN. Extent of power. Statutory construction.

Under Acts 1907, ch. 254, authorizing a railroad to condemn a
pipe line between a running stream and its reservoir or tanks,
a pipe line may be condemned between a reservoir formed
by damming a running stream and the railroad's tanks. (*Post,
p.* 571.)

4. EMINENT DOMAIN. Proceedings to take. Offenses. Threat-
ened misuser.

Where a railroad company has been granted eminent domain
power for pipe line purposes, an owner cannot defeat con-

demnation proceedings upon the ground that the railroad intends to divert some of the water to purposes not contemplated by the statute. (*Post, pp.* 571, 572.)

5. **EMINENT DOMAIN. Rights acquired. Misuser. Who may question.**

Where a railroad has power to condemn for pipe line purposes, only the State may question its diversion of the water to purposes not contemplated by the statute. (*Post, pp.* 571, 572.)`

Cases cited and approved: Barrow y. Turnpike Co., 28 Tenn., 304; Heiskell v. Chickasaw Lodge, 87 Tenn., 668; Railroad Co. v. Transportation Co., 128 Tenn., 277.

6. **EMINENT DOMAIN. Nature. Acts constituting. Appropriation.**

Where a pipe line was located along a highway and the pipe laid thereon awaiting the digging of ditches in which it was to be placed, *held* the abutting owners' fee interest in the highway was taken so as to authorize him to bring suit under Shannon's Code, secs. 1866, 1867. (*Post, pp.* 573-575.)

Case cited and approved: Calahan v. Dunn, 78 Cal., 366.

7. **INJUNCTION. Dissolution. Dismissal of bill.**

There was no error in dismissing a bill upon a hearing to dissolve a preliminary injunction, where the parties treated the cause as if submitted on bill, answer, and proof. (*Post, pp.* 575, 576.)

8. **EMINENT DOMAIN. Remedies of owner. Injunction. Failure to institute condemnation proceedings.**

Where defendant railroad company had the right to condemn complainant's fee interest in a highway, and had already taken possession of it, complainant could not enjoin completion of the work, although no condemnation proceedings had been started. (*Post, p.* 576.)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.—W. C. CHERRY, Special Chancellor.

135 Tenn.—36

E. A. PRICE and PITTS & McCONNICO, for appellant.

KEEBLE & SEAY and F. M. BASS, for appellees.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The bill was filed to obtain an injunction restraining the defendant above named, and the Nashville, Chattanooga & St. Louis Railway Company, and the Lewisburg & Northern Railroad Company, from laying a line of water pipe within the limits of Granny White Pike, at any point where the fee in the pike was owned by any one or more of the complainants.

Mrs. Lea owned a tract of land known as "Lealand," lying to the east of the pike, and her property line extended to the middle of the pike. She also owned an undivided interest in a tract bounding the pike on the west side, and the east line of this tract extended to the middle of the pike. Her co-complainants, Perry and wife, Sawyers and wife, and Uhl and wife, owned separate tracts, bounding the pike on the west side. The east line of these latter tracts extended to the middle of the pike.

The bill also sought to restrain defendants from so erecting or constructing a dam south and southwest of the Lealand tract as to cause any part of that tract to be overflowed by water escaping over the dam.

For some time prior to the fling of the bill the defendant Lewisburg & Northern Railroad Company had been engaged in the construction of a dam located to the

Lea v. Louisville & N. R. Co.

south and southwest of Lealand, and on land owned by said railroad company contiguous to the Lealand tract, the purpose of the company being by means of the dam to make a reservoir or artificial lake. This lake was to cover about eighty-three acres of land. It was to have a capacity sufficient to hold more than 400,000,000 gallons of water. The dam was so planned that it would impound on the eighty-three acres of the company's lands the waters of Otter creek, and its tributaries.

The dam and the several tracts of land already mentioned lie south of the city of Nashville, in Davidson county. The Lewisburg & Northern Railroad Company was, at the same time it was engaged in the construction of the dam, also engaged in the construction of extensive switchyards, known as the "Radnor yards." Located within these yards it had some forty or more miles of railroad tracks, which it had constructed for its railroad purposes. The Radnor yards and the reservoir site were about three miles apart, and the plan of the railroad company was to connect the two by an iron water pipe, and thus supply its tanks in the Radnor yards with water necessary for the operation of these yards, and the various railroad purposes to be there conducted.

The Lewisburg & Northern Railroad Company, having theretofore secured the consent of the county of Davidson so to do, proceeded to take possession of the western margin of the pike, to the extent of going thereon, surveying a line for the laying of its pipe

and distributing the necessary pipe for the construction of the line throughout the entire distance along the pike on each side of which the lands owned by the complainants abutted. And while the railroad company was thus proceeding to connect the reservoir with the Radnor yards by its pipe line, its operations were restrained by service upon it of the injunction in this cause.

The Nashville, Chattanooga & St. Louis Railway Company, by its separate answer, denied all corporate connection either with the building of the dam, or with the laying of the pipe mentioned in the bill, and after the filing of its answer, it appears to have been an entirely inactive party in the cause.

By the joint answer of the other two defendants, the material allegations of the original bill were put at issue. The Lewisburg & Northern Railroad Company, by this answer, assumed the entire responsibility of the building of the dam and the laying down of the pipe line, and the proposed construction thereof. The Louisville and Nashville Railroad Company admitted that it was the owner of more than a majority of the capital stock of the Nashville, Chattanooga & St. Louis Railway Company, and of all the capital stock of the Lewisburg & Northern Railroad Company, except a few shares vested in the officers and directors of the latter company, but the Louisville & Nashville Railroad Company disaffirmed any corporate responsibility for the construction of the reservoir, or the pipe line.

After the cause was at issue, defendants moved to dissolve the injunction on bill and answer, and while the pleadings were being read to the court on the hearing of this motion the Louisville & Nashville Railroad Company, and its codefendant, the Lewisburg & Northern Railroad Company, moved the court for leave to amend their answer. This motion was granted, and the answer was amended as of date July 31, 1914. Thereafter, on August 21, 1914, the motion to dissolve was disposed of by the court as shown by the following minute entry:

"This cause came on to be heard on this August, 21, 1914, and on previous days of the term, upon the motion of defendants to dissolve the preliminary injunction heretofore granted herein upon bill and answer, and thereupon the cause was heard upon the pleadings, the affidavits permitted to be filed by the court in support and in opposition to said motion, the certified copies of deeds filed by complainants, and the briefs and oral arguments of counsel.

"Upon consideration of all of which the court is of the opinion and doth order, adjudge, and decree as follows:

"1. That the boundary line of complainants' property is the middle line of the Granny White turnpike, and that complainants are the owners of the fee in the Granny White turnpike as alleged in the complainants' bill, subject only to an easement in the county over the surface of the pike for travel; and that the only effect of the permission obtained from the county of Davidson

for the railroad to lay pipe in said pike was to legalize the railroad company's interference with the county's easement or right of travel upon the surface of the pike.

"2. That the laying of the pipe line in the Granny White turnpike creates and constitutes an additional servitude upon the property of the complainants, and that complainants are not affected by the permission of the county to the defendant or its agents.

"3. That all of the negotiations between the agents of the defendants and Mrs. Lea with regard to the going through Lealand had no application to the laying or passage of the pipe line along the Granny White turnpike, and that there is no estoppel operative against complainant, Mrs. Lea, in this case, and that this is disclosed by defendants' own answer and affidavits.

"4. That chapter 254 of the Acts of 1907 is constitutional, and the construction placed upon said statute by defendants is a proper one, and that under the statute defendants possess the right of eminent domain to condemn the right of way for the pipe line in question.

"5. That the mere fact that the defendant Lewisburg & Northern Railroad has permanently fixed a location for this pipe line and laid down the pipes constitute a taking of complainants' property, and that taking occurred prior to the filing of this bill; and the damages to be suffered by complainants are not irreparable.

"6. That all of the facts in the case that are material in the view of the court are conceded by the opposing

Lea v. Louisville & N. R. Co.

parties, either in the pleadings or in the affidavits; and, there being no material difference in the pleadings and in the affidavits of the defendants and the complainants with reference to any material facts, the court, of its own motion, hereby dismisses complainants' bill and dissolves the injunction heretofore granted in this cause.''

To that part of the decree set out in its first, second, and third paragraphs, the defendants Louisville & Nashville and Lewisburg & Northern Railroad Companies each excepted, and prayed therefrom an appeal to the court of civil appeals, which was granted.

To that part of the decree set out in its fourth, fifth, and sixth paragraphs, the complainants excepted, and prayed an appeal to the court of civil appeals, which was granted.

The respective appeals were perfected.

In the court of civil appeals complainants moved to transfer the cause to this court, on the ground that the constitutionality of a statute of this State was involved. The motion was granted and the cause transferred, and the complainant has filed its assignments of error in this court.

Incorporated in the bill of exceptions are various matters of evidence in the form of affidavits, letters, maps, etc. These were read on the hearing of the motion without objection or exception. They were read by, and on behalf of, the respective parties. Some of these matters were incorporated into the answer of the defendants by the amendment noted supra, and some

of them, on behalf of complainants, were apparently treated as parts of the bill without formal amendment.

The chancellor was correct in the rulings made as set out in the first, second, and third paragraphs of the decree hereinfore set out. In fact, no serious insistence to the contrary is made by the appellant railroad companies, although, as already stated, they appealed from those parts of the decree, This brings us to a consideration of those parts of the decree from which the complainants appealed, to wit, its paragraphs 4, 5 and 6.

We will first consider the points made by complainants in respect of their insistence that the chancellor was in error in the conclusions reached by him, as set out in the fourth paragraph of the decree.

Chapter 254, Acts of 1907, reads:

"An act extending the powers of railroad companies and corporations owning or operating, or which may hereafter own or operate, a railroad, or any part thereof in the State of Tennessee, to condemn property to provide water for their use as such.

"Section. 1. Be it enacted by the general assembly of the State of Tennessee, that any railroad company or corporation owning or operating a railroad or any part thereof in Tennessee or that may hereafter do so, whether chartered under the laws of the State of Tennessee, or under the laws of any other State or States, be, and it is hereby authorized and empowered to condemn, under the laws of eminent domain, property for a cite for a reservoir or tank, also the use of the water

from any running stream, and also a way on, in and along which to lay pipe line or lines to convey water to its reservoir or tanks whenever the same or any part of them may be needed for the purpose of such railroad: provided, such property, running streams, or rights of way shall not be taken or condemned without just compensation to the owner or owners; and, provided, further, that the rights herein conferred shall be subject to all the restrictions and accompanied by all the rights and powers of the law and practice in force in this State on the subject of eminent domain.

"Provided, however, that the powers herein conferred shall be exercised by railroad companies only for the purpose of erecting and maintaining tanks and reservoirs for the purpose of operating trains; and, provided, further, that the provisions of this act shall not apply to springs or private ponds."

"Sec. 2. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it.

"Passed April 4, 1907."

Complainants insist that this act is unlawful class legislation, and as such that it is in contravention of article 11, section 8, of the Constitution of this State, and of section 1, of the Fourteenth Amendment of the Constitution of the United States. This insistence is based on the idea that the power to condemn, by the act conferred, is confined to the railroad companies, or corporations owning or operating a railroad, or any part thereof, in Tennessee, at the time of the passage of the

act, or such companies or corporations as might own or operate a railroad or any part thereof in Tennessee after the passage of the act, and that the act, while embracing within its application such railroad companies, does not extend to, or confer, such power— "upon a new railroad company engaged for the first time in the construction, or becoming the owner of a railroad or any part thereof, in Tennessee."

There is no merit in this point. The act does, of course, apply as well to a new railroad company or corporation as to an old one; but it does not apply until there is such corporation, "owning or operating a railroad, or any part thereof, in Tennessee;" nor can we see any good reason why it should. Indeed, every sound reason seems to indicate that the act is broad enough in its application. Its classification, as we see it, is entirely reasonable; nor can we see that it is in any sense arbitrary or capricious. It applies equally to all such companies or corporations who are in, or who may come into, the like situation and circumstances, constituting the reason for, and the basis of, the classification which the act makes; and we think the act comes, in its classification, fully up to the standard required by our cases. *Stratton* v. *Morris,* 89 Tenn. (5 Pick.), 497, 15 S. W., 87, 12 L. R. A., 70; *Dugger* v. *Insurance Co.,* 95 Tenn. (11 Pick.), 245, 32 S. W., 5, 28 L. R. A., 796; *Harbison* v. *Iron* Co., 103 Tenn. (19 Pick.), 421, 53 S. W., 955, 56 L. R. A., 316, 76 Am. St. Rep., 682; *Condon* v. *Maloney,* 108 Tenn. (24 Pick.), 82, 65 S. W., 871; *Scott* v. *Marley,* 124 Tenn. (16 Cates), 388, 137 S. W., 492.

Passing to the next point, it is seen that, conceding the validity of the act, the power conferred is:

"The condemnation under the law of eminent domain, of property for a site for a reservoir or tank, also the use of the water from any running stream, and also a way on, in and along which to lay pipe line or lines to convey water to its reservoir or tanks whenever the same or any of them may be needed for the purpose of such railroad."

Complainants insist that the power conferred by the statute does not include the condemnation of a way, in and along Granny White turnpike in which to lay a pipe line in order to connect the reservoir with the tanks of the railroad company in its Radnor yards, so that water would flow from the reservoir to the tanks.

This insistence is unsound. It is clear upon the record that the water in the reservoir is that of a running stream or streams, merely impounded by a dam. As already stated, the water of the running stream is not entirely stopped in its natural flow. That flow is merely impeded by the dam, to the end that a larger body of water resulting from the natural flow may be collected at the point called the reservoir; but it is clear that the scheme contemplates the confinement at such point only of so much water as the reservoir will hold, the purpose being that the surplus shall continue in its natural flow through a spillway.

The water taken from the reservoir by the pipes is therefore running water, and water taken from a run-

ning stream, and falls literally within the power con-
ferred by the act. Beyond a doubt on this record the
water planned to be conducted by the pipes is needed
for the purpose of the railroad company in its Radnor
yards, and for the operation of its trains. It is said
by complainants that the record also shows a purpose
on the part of the Lewisburg & Northern Railroad
Company to allow the other two corporate defendants
the use of the water and the Radnor yards for their
individual corporate purposes.

Suppose this be true, yet it is manifest that the sta-
tute conferred power on the Lewisburg & Northern
Railroad Company to condemn the way for a pipe line
for its own purposes, and we are unable to see how
this right can be defeated at the instance of complain-
ants on the ground that, after the right is exercised, the
condemnor may make an improper use of the water
conveyed to its Radnor yards, or of the yards them-
selves. If, after having exercised the power to con-
demn, the condemnor should make an improper use of
the water in its yards, or of the yards, the sovereign
State which had conferred the power could complain
of the abuse, but not these complainants. *Barrow* v.
*Nashville, etc., Turnpike Co.,* 28 Tenn. (9 Humph.),
304; *Heiskell* v. *Chickasaw Lodge,* 87 Tenn. (3 Pick.),
668, 11 S. W., 825, 4 L. R. A., 699; *Railroad Co.* v.
*Transportation Co.,* 128 Tenn. (1 Thomp.) 277, 160 S.
W. 522.

We, therefore, overrule all of complainants' assign-
ments of error in respect of the fourth paragraph of
the decree.

Lea v. Louisville & N. R. Co.

While complainants by their second assignment of error question the correctness of the conclusion set out in the fifth paragraph of the decree, yet in complainants' brief, we find this admission:

"We now want to say after a mature and deliberate consideration of the matter, that if the Lewisburg & Northern Railroad Company really possesses the power of eminent domain to condemn the right of way for this pipe line through complainants' property in the bed of Granny White turnpike, we do not care to insist that the special chancellor was in error in holding that the Lewisburg & Northern Railroad Company had actually taken possession of this right of way, in the sense of sections 1866 and 1867 of Shannon's Code, because such insistence upon our part would be very narrow and unsubstantial, and if successfully maintained by us, could hereafter probably be obviated and rendered futile by the Lewisburg & Northern Railroad Company, if said company really possesses the power of eminent domain to condemn the right of way for this pipe line."

The authorities are not altogether in harmony on the point as to what constitutes a taking of private property for public use within the meaning of the statutes conferring the right of eminent domain. According to some of the cases there must be a taking altogether, a seizure, a direct appropriation and dispossession of the owner, such a taking as divests the owner of title and control of the property taken, and an unqualified appropriation of it to the public, but the weight of author-

ity is against this strict construction; and, as said in Cyc., vol. 15, p. 652:

"The general rule (deducible from the cases) seems to be that any destruction, restriction, or interruption of the common and necessary use and enjoyment of the property in a lawful manner may constitute a taking. It is not necessary that the owner be wholly deprived of the use of his property. The term "taking" should not be limited to the absolute conversion of property, nor it is material whether the property is removed from the possession of the owner, or in any respect changes hands. It is not necessary that the possession be an actual physical taking. To constitute a taking the power of disposal need not be interfered with. The entire or any partial destruction of private property for public use is an appropriation of it within the meaning of the Constitution. To constitute an appropriation within the meaning of the Fifth Amendment to the United States Constitution, the taking must be of a kind from which some benefit is to be anticipated."

See cases cited in the notes as supporting the text quoted, supra. See, also, *Callahan* v. *Dunn*, 78 Cal., 366, 20 Pac., 737.

Without discussing the authorities or the facts at length, we are satisfied from the facts which are without material dispute that the Lewisburg & Northern Railroad Company had, prior to the filing of the bill in this cause, fixed a permanent location for its pipe line along the margin of Granny White turnpike where complainants' property abutted thereon, and that

possession of the margin of the pike so fixed as the lo-
cation of the pipe line had been taken by the laying
down of heavy iron pipe thereon intended to be laid in
place where it should permanently remain after the
digging of the ditch necessary in order to place the
pipe below the surface of the turnpike.  These facts,
we think, amount to a taking under our statutes, and
the authorities above referred to.

Paragraph 6 of the decree is assailed by the third,
fourth and fifth of complainants' assignments of error,
yet in complainants' brief, it is said:

"Since we have so frankly  conceded  that  if  the
Lewisburg & Northern Railroad Company really pos-
sesses the right of eminent domain to condemn the
right of way for its pipe line, the special chancellor did
not commit a reversible error in dissolving the prelim-
inary injunction so far as the pipe-line feature of the
case is concerned," etc.

The above concession was a very proper one on this
record.  It is clear that the parties and the chancellor,
without saying so in terms, treated the cause as sub-
mitted on bill, answer and proof.  The bill of excep-
tions shows the order in which the proof was submit-
ted, and while its submission was somewhat informal
in character, this course seems to have been taken by
mutual consent, and certainly without objection.  The
case seems to have been fully developed, and, looking
at the matter as it was treated by both court and coun-
sel in the proceedings which led to the final decree, we
perceive no error in the action of the chancellor where-

by he not only dissolved the injunction but also dismissed the bill.

It was no doubt clear to him, and is very clear to us, that when complainants failed in their insistence that the railroad company had no right to condemn, there could be no debate on the point that the remedy of complainants was at law, and not in equity.

The chancellor was therefore correct in remitting complainants to a legal forum, since they were clearly without right to equitable relief. Treated as the cause was, there is no error in the decree of the chancellor, and it is affirmed, at complainants' cost.