# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 5, 2014 Session[1]

## MACK PHILLIPS ET AL. V. MONTGOMERY COUNTY, TENNESSEE ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Montgomery County**
**No. MC-CC-CV-RM-11-2535      Judge Ross H. Hicks**

_____

**No. M2012-00737-SC-R11-CV - Filed August 18, 2014**

_____

We granted permission to appeal to determine whether article I, section 21 of the Tennessee Constitution requires a government to compensate a property owner for a regulatory taking of private property. We hold that article I, section 21 encompasses regulatory takings in the same manner as the Takings Clause of the Fifth Amendment to the United States Constitution. Accordingly, we reverse the judgment of the Court of Appeals dismissing the property owners' complaint alleging a state constitutional regulatory takings claim and remand this matter to the trial court for further proceedings consistent with this decision.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed in Part and Affirmed in Part; Complaint Reinstated; Case Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Stanley M. Ross and Steven T. Atkins, Clarksville, Tennessee, for the appellants, Mack Phillips and Leann Phillips.

Erik Fuqua, Austin Peay VII, and Dan L. Nolan, Jr., Clarksville, Tennessee, for the appellees, Montgomery County, Tennessee and Clarksville Montgomery County Regional Planning Commission.

---

[1] Oral argument in this case was heard on February 5, 2014, at the Belmont University College of Law in Nashville, Tennessee.

**OPINION**

**I. Factual and Procedural History**

This interlocutory appeal began as a claim for a regulatory taking under article I, section 21 of the Tennessee Constitution, for which compensation was sought pursuant to the inverse condemnation statute. Tenn. Code Ann. § 29-16-123 (2012).[2] Mack and Leann Phillips (the "Property Owners") own approximately 15.62 acres in Montgomery County, Tennessee. The Property Owners submitted a preliminary subdivision plat to the Clarksville Montgomery County Regional Planning Commission (the "Planning Commission") pursuant to the county zoning resolution.[3] The Planning Commission held a public hearing on the matter on October 27, 2010, and there is no allegation that any member of the community opposed the plat. Nevertheless, the Planning Commission denied the proposed plat, citing the following reasons:

> 1. Under Article V, General Provisions, Item Three[4] states: "All proposed subdivision of land shall conform to the applicable portion of the comprehensive plan for the Clarksville Montgomery County Regional Planning Commission."
>
> 2. Under Article V, General Provisions, Item Five states: "The Planning Commission shall not approve the subdivision of land if from adequate investigations conducted by all agencies concerned it has been determined that in the best interest of the public the site is not suitable for platting and development purposes of the kind proposed."

On December 20, 2010, the Property Owners filed a petition for a writ of certiorari in the Chancery Court for Montgomery County, seeking review of the Planning Commission's denial of their subdivision plat. This matter was still pending in the Chancery Court at the time the parties presented oral argument before this Court.

---

[2] The statute in effect at the time this suit was filed, Tenn. Code Ann. 29-16-123 (2000), is identical to the statute currently in effect.

[3] The Property Owners allege that their subdivision plat was compliant with the applicable zoning ordinances, but the complaint does not allege that the Planning Commission made any findings regarding this issue.

[4] The document from which the Planning Commission quoted and to which the Property Owners referred in their complaint is not identified or included in the record on appeal.

On October 24, 2011, the Property Owners filed this action against the Planning Commission and the County (collectively, the "County") in the Circuit Court for Montgomery County, asserting a claim of a regulatory taking under article I, section 21 of the Tennessee Constitution,[5] for which they sought compensation pursuant to the inverse condemnation statute. Tenn. Code Ann. § 29-16-123. In their complaint, the Property Owners alleged that the Planning Commission's denial of their plat was based solely upon the fact that their land lies in the path of a potential future extension of State Highway 374 and that there are no current plans to begin construction or condemnation proceedings for the highway extension.

The County filed a motion to dismiss under Tennessee Rule of Civil Procedure 12.02(6), arguing that the Property Owners' complaint failed to state a claim upon which relief could be granted because this Court had not yet recognized regulatory takings under the Tennessee Constitution. After a hearing on February 17, 2012, the trial court denied the County's motion to dismiss.

The County sought and obtained the trial court's permission to seek an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The Court of Appeals granted the interlocutory appeal and reversed in part the trial court's judgment, holding that the regulatory takings claim should be dismissed because article I, section 21 had not been construed as encompassing regulatory takings. The Court of Appeals nonetheless held that the Property Owners had alleged facts sufficient to state a claim for inverse condemnation and remanded to the trial court for further proceedings on that claim. Phillips v. Montgomery Cnty., No. M2012-00737-COA-R9-CV, 2013 WL 3378952, at *3, *5 (Tenn. Ct. App. June 28, 2013).

The Property Owners filed a Tennessee Rule of Appellate Procedure 11 application to this Court, which we granted.

## II. Standard of Review

A motion to dismiss based upon Tennessee Rule of Civil Procedure 12.02(6) requires a court to determine if the pleadings state a claim upon which relief may be granted. Tenn. R. Civ. P. 12.02(6); Cullum v. McCool, 432 S.W.3d 829, 832 (Tenn. 2013). A Rule 12.02(6) motion challenges "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011). A defendant filing a motion to dismiss "admits the truth of all the relevant and material allegations contained in the complaint, but . . . asserts that the

---

[5] The Property Owners did not rely upon the Takings Clause of the United States Constitution.

allegations fail to establish a cause of action." Id. (quoting Brown v. Tenn. Title Loans, Inc., 328 S.W.3d 850, 854 (Tenn. 2010)) (alteration in original) (internal quotation marks omitted). The resolution of such a motion is determined by examining the pleadings alone. Id.

In adjudicating such motions, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." Id. (quoting Tigg v. Pirelli Tire Corp., 232 S.W.3d 28, 31-32 (Tenn. 2007)); Cullum, 432 S.W.3d at 832. A motion to dismiss should be granted only if it appears that "'the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" Webb, 346 S.W.3d at 426 (quoting Crews v. Buckman Labs. Int'l, Inc., 78 S.W.3d 852, 857 (Tenn. 2002)). Tennessee jurisprudence on this issue "reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits . . . ." Cullum, 2013 WL 6665074, at *2 (quoting Webb, 346 S.W.3d at 437). We review a lower court's decision on such a motion de novo without any presumption of correctness. Id.

### III. Analysis

The Property Owners argue that the denial of their subdivision plat constitutes a regulatory taking for which article I, section 21 of the Tennessee Constitution requires compensation pursuant to the inverse condemnation statute, Tennessee Code Annotated section 29-16-123.[6] They base their argument upon the plain language of the Tennessee Constitution, its similarity to the United States Constitution, and thus, the application of federal, as well as state, decisional law precedents.

The County asserts that this Court has not previously interpreted article I, section 21 as encompassing regulatory takings and should not do so now, even though the United States

___

[6] The Property Owners have not alleged a violation of their right to due process pursuant to the Tennessee Constitution's "law of the land" provision, article I, section 8. We have long held that article I, section 8 is synonymous with the due process clause of the Fourteenth Amendment to the United States Constitution, requiring statutes to have a reasonable relation to a proper legislative purpose that is neither arbitrary nor discriminatory, unless a fundamental right is implicated. Gallaher v. Elam, 104 S.W.3d 455, 463 (Tenn. 2003); Riggs v. Burson, 941 S.W.2d 44, 51 (Tenn. 1997). Accordingly, we have reviewed land use regulations and zoning ordinances under a rational basis test and tended to uphold such enactments as proper exercises of the state's police power. Consol. Waste Sys. L.L.C. v. Metro. Gov't of Nashville and Davidson Cnty., No. M2002-02582-COA-R3-CV, 2005 WL 1541860 at *1,*6 (Tenn. Ct. App. June 30, 2005) (citing Fallin v. Knox Cnty. Bd. of Comm'rs, 656 S.W.2d 338, 342-43 (Tenn. 1983)); see also Draper v. Haynes, 567 S.W.2d 462, 465 (Tenn. 1978); Spencer-Sturla Co. v. City of Memphis, 290 S.W. 608, 611 (Tenn. 1927). This opinion in no way abrogates such decisions.

Supreme Court has interpreted the Takings Clause of the Fifth Amendment as contemplating such claims. The County asserts that, because article I, section 21 does not encompass regulatory takings, the Property Owners have failed to allege a governmental taking of property for which compensation may be sought pursuant to an inverse condemnation claim. Thus, the County asserts that the Court of Appeals should have dismissed the Property Owners' entire complaint rather than remanding the inverse condemnation claim to the trial court for further proceedings.[7]

*A. Federal Regulatory Takings Law*

The Fifth Amendment to the United States Constitution declares that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. The latter clause, known as the "Takings" or "Compensation" clause, applies to the States through the Fourteenth Amendment. See Chicago, B. & Q. R.R. Co. v. City of Chicago, 166 U.S. 226 (1897). The Takings Clause does not prohibit the government from taking private property "'but instead places a condition on the exercise of that power'" by requiring the government to pay just compensation for any property taken. Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005) (quoting First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles, 482 U.S. 304, 314 (1987)). The requirement of "just compensation" prevents the government from "'forcing some people alone to bear burdens which, in all fairness and justice, should be borne by the public as a whole.'" Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 320-21 (2002) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)); Palazzolo v. Rhode Island, 533 U.S. 606, 617-18 (2001).

---

[7] The County has not disputed the ripeness of the Property Owners' claim. We recently held in B & B Enterprises of Wilson County, L.L.C. v. City of Lebanon, 318 S.W.3d 839, 846-49 (Tenn. 2010), that a regulatory takings claim ripens when a Planning Commission makes a "final decision" regarding a property, rather than at the conclusion of judicial review of the administrative decision; thus, we held that the statute of limitations on an inverse condemnation claim begins to run at the moment the Planning Commission's final decision was issued. See also Tenn. Code Ann. § 29-16-124 (2012). We note, however, that generally shorter time lines apply in judicial review of administrative decisions. See Tenn. Code Ann. § 27-9-102 (2000) (stating that a party appealing a decision of a board or commission has sixty days to file a petition for writ of certiorari in chancery court); § 27-9-111 (Supp. 2013) (providing that within ninety days after the transcript of the case has been filed, the cause shall stand for trial and that such a cause has precedence over other litigation). Given these statutory mandates, it is unclear why the Property Owners' petition for writ of certiorari has not proceeded in the Chancery Court. Nothing prevents the parties in an inverse condemnation action from requesting, or the trial court from granting, a stay of that action until judicial review of the administrative decision is concluded. Indeed, such a course is preferable. Once judicial review of the administrative decision is final, the trial court in the inverse condemnation action will be better able to determine both the existence and scope of the alleged regulatory taking.

The concept of a regulatory taking first emerged almost a century ago in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415-16 (1922). While recognizing that government could not function if it had to pay every time regulations diminish land values, id. at 413, the Court held that a taking occurs "if regulation goes too far," id. at 415. With this "storied but cryptic formulation," the Court first declared that governmental action which diminishes private property rights, but which does not amount to a direct appropriation or physical invasion of private property, may constitute a taking that necessitates the payment of "just compensation." Lingle, 544 U.S. at 537.

In the wake of the Pennsylvania Coal decision, a voluminous body of regulatory takings case law has developed and has been the subject of much debate, see generally Robert Meltz, Takings Law Today: A Primer for the Perplexed, 34 Ecology L.Q. 307 (2007), and frequent critique.[8] However, in recent years the Court has defined more precisely the parameters of its regulatory takings jurisprudence. In Lingle, the Supreme Court distilled the major categories of regulatory takings and sought to untangle its regulatory takings jurisprudence from due process analysis. 544 U.S. at 531-32. Both steps were met with "largely appreciative notice by commentators" and have been widely adopted by courts. See, e.g., Mark Fenster, The Stubborn Incoherence of Regulatory Takings, 28 Stan. Envtl. L.J. 525, 526 (2009) (citing J. Peter Byrne, Due Process Land Use Claims After Lingle, 34 Ecology L.Q. 471, 471 (2007)); D. Benjamin Barros, At Last, Some Clarity: The Potential Long-Term Impact of Lingle v. Chevron and the Separation of Takings and Substantive Due Process, 69 Alb. L. Rev. 343, 343 (2006)); Wensmann Realty, Inc. v. City of Eagan, 734 N.W.2d 623, 639 (Minn. 2007); Dunes W. Golf Club, L.L.C. v. Town of Mount Pleasant, 737 S.E.2d 601, 611 (S.C. 2013); Lockaway Storage v. Cnty. of Alameda, 156 Cal. Rptr. 3d 607, 623-25 (Cal. Ct. App. 2013).

The Lingle Court reiterated the two categories of governmental regulatory actions generally recognized as *per se* takings under the Fifth Amendment. 544 U.S. at 538. The first category involves situations in which the government "requires an owner to suffer a permanent physical invasion of her property—however minor" and therefore must provide the owner just compensation. Id. (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982)). The second category consists of "total regulatory takings," in which governmental action deprives a property owner of "'*all* economically beneficial us[e]' of her property." Id. (alteration in original) (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003,

---

[8] See, e.g., Carol M. Rose, Mahon Reconstructed: Why the Takings Issue is Still a Muddle, 57 S. Cal. L. Rev. 561 (1984); Sheffield Dev. Co. v. City of Glenn Heights, 140 S.W.3d 660, 671 (Tex. 2004) (characterizing takings jurisprudence as a "'sophistic Miltonian Serbonian Bog'") (quoting City of Austin v. Teague, 570 S.W.2d 389, 391 (Tex. 1978)); Presbytery of Seattle v. King Cnty., 787 P.2d 907, 911 (Wash. 1990) (en banc) (describing tests for over-regulation as a "quagmire").

1019 (1992)).  Both categories of per se regulatory takings are "relatively narrow," id., and the latter especially "rare."  Lucas, 505 U.S. at 1018.[9]

Lingle also instructed that when a claim involves neither of these categories, governmental action alleged to constitute a regulatory taking must be assessed under the standards first established in Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978).  Lingle, 544 U.S. at 538-39.  The two "primary" Penn Central factors to be considered are "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." Id. (quoting Penn Cent. Transp. Co., 438 U.S. at 124) (alterations omitted).  The "character of the governmental action" may also be a third factor that will be relevant to determining if a taking has occurred.  Id. at 539.  These "ad hoc, factual inquiries," Palazzolo, 533 U.S. at 633 (O'Connor, J., concurring) (quoting Penn Central, 438 U.S. at 124), "requir[ing] careful examination and weighing of all the relevant circumstances," id. at 636, have been widely recognized as the "polestar" of federal takings law, id. at 633.

An overwhelming majority of states whose constitutions or statutes contain provisions similar to the Takings Clause have interpreted these provisions as encompassing regulatory takings, and these states have used the analytical framework developed by the United States Supreme Court when adjudicating regulatory takings claims.[10]  See Wonders v. Pima Cnty.,

---

[9] The Court in Lingle was also careful to approve Nollan v. California Coastal Commission, 483 U.S. 825 (1987), and Dolan v. City of Tigard, 512 U.S. 374 (1994), both of which held that governmental action imposing land-use exactions on property owners may constitute compensable takings.  Lingle, 544 U.S. at 546.

[10] A few states have interpreted comparable clauses in their own state constitutions as providing greater protection to property owners and requiring compensation for regulatory takings in more circumstances than would be required by federal precedents.  See, e.g., R & Y, Inc. v. Municipality of Anchorage, 34 P.3d 289, 293 (Alaska 2001) (recognizing that the Alaska Constitution offers property owners broader protection than under the United States Constitution); Avenal v. State, 886 S.2d 1085, 1103-08 (La. 2004) (recognizing that the Louisiana Constitution requires compensation for property "damaged" as well as "taken"); Gilich v. Miss. State Highway Comm'n, 574 So.2d 8, 11, 12 (Miss. 1990) (holding that the Mississippi Constitution offers broader protection than the United States Constitution for property "taken or damaged"); Krier v. Dell Rapids Twp., 709 N.W.2d 841, 846 (S.D. 2006) (recognizing that the South Dakota Constitution imposes stricter "public use" requirements than the United States Constitution and requires compensation when property is "taken" or "damaged").

A small minority of states have developed their own tests for regulatory takings, based upon both state and federal precedents.  See Coast Range Conifers, L.L.C. v. State ex rel. Or. State Bd. of Forestry, 117 P.3d 990, 993, 996 (Or. 2005) (a regulatory taking occurs under the Oregon Constitution only if there is no economically viable use of the property); Utah Dep't of Transp. v. Admiral Beverage Corp., 275 P.3d 208, 215 (Utah 2011) (Utah's just compensation clause is triggered where there is "any substantial interference

89 P.3d 810, 814-16 (Ariz. Ct. App. 2004); Forest Glade Mgmt., L.L.C. v. City of Hot Springs, No. CA 08-200, 2008 WL 4876230, at *2-3 (Ark. Ct. App. Nov. 12, 2008); Kavanau v. Santa Monica Rent Control Bd., 941 P.2d 851, 859-60 (Cal. 1997); Animas Valley Sand & Gravel, Inc. v. Bd. of Cnty. Comm'rs of the Cnty. of La Plata, 38 P.3d 59, 63-64 (Colo. 2001); A. Gallo & Co. v. Comm'r of Envtl. Prot., 73 A.3d 693, 701 (Conn. 2013); Salem Church (Delaware) Assocs. v. New Castle Cnty., No. 20305-NC, 2006 WL 4782453, at *16-17 (Del. Ch. Oct. 6, 2006); Embassy Real Estate Holdings, L.L.C. v. D. C. Mayor's Agent for Historic Pres., 944 A.2d 1036, 1052-55 (D.C. 2008); St. Johns River Water Mgmt. Dist. v. Koontz, 77 So.3d 1220, 1231 (Fla. 2011) overruled on other grounds by Koontz v. St. Johns River Water Mgmt. Dist., 133 S.Ct. 2586 (2013); Greater Atlanta Homebuilders Ass'n v. DeKalb Cnty., 588 S.E.2d 694, 696-98 (Ga. 2003); Pub. Access Shoreline Haw. v. Haw. Cnty. Planning Comm'n, 903 P.2d 1246, 1272-73 (Haw. 1995); Leone v. Cnty. of Maui, 284 P.3d 956, 962-66 (Haw. Ct. App. 2012); Boise Tower Assocs., L.L.C. v. Hogland, 215 P.3d 494, 503-04 (Idaho 2009); N. Ill. Home Builders Ass'n v. Cnty. of Du Page, 649 N.E.2d 384, 388 (Ill. 1995); State v. Kimco of Evansville, Inc., 902 N.E.2d 206, 210-12 (Ind. 2009); Kingsway Cathedral v. Iowa Dep't of Transp., 711 N.W.2d 6, 9-11 (Iowa 2006); Frick v. City of Salina, 235 P.3d 1211, 1223-24 (Kan. 2010); Baston v. Cnty. of Kenton ex rel. Kenton Cnty. Airport Bd., 319 S.W.3d 401, 406 (Ky. 2010); Annison v. Hoover, 517 So.2d 420, 423 (La. Ct. App. 1987); MC Assocs. v. Town of Cape Elizabeth, 773 A.2d 439, 442 (Me. 2001); Neifert v. Dep't of the Env't, 910 A.2d 1100, 1118 n.33 (Md. 2006); Blair v. Dep't of Conservation and Recreation, 932 N.E.2d 267, 274 (Mass. 2010); K & K Constr., Inc. v. Dep't of Natural Res., 575 N.W.2d 531, 535 (Mich. 1998); Wensmann Realty, Inc. v. City of Eagan, 734 N.W.2d 623, 631-33 (Minn. 2007); Walters v. City of Greenville, 751 So.2d 1206, 1210-11 (Miss. Ct. App. 1999); Clay Cnty. ex rel. Cnty. Comm'n of Clay Cnty. v. Harley & Susie Bogue, Inc., 988 S.W.2d 102, 106-07 (Mo. Ct. App. 1999); Kafka v. Mont. Dep't of Fish, Wildlife & Parks, 201 P.3d 8, 18 (Mont. 2008); Scofield v. State Dep't of Natural Res., 753 N.W.2d 345, 358-59 (Neb. 2008); McCarran Int'l Airport v. Sisolak, 137 P.3d 1110, 1121-23 (Nev. 2006); Burrows v. City of Keene, 432 A.2d 15, 18-21 (N.H. 1981); Mansoldo v. State, 898 A.2d 1018, 1023-24 (N.J. 2006); Moongate Water Co. v. City of Las Cruces, 302 P.3d 405, 410 (N.M. 2013); Seawall Assocs. v. City of New York, 542 N.E.2d 1059, 1062-70 (N.Y. 1989); Finch v. City of Durham, 384 S.E.2d 8, 14-20 (N.C. 1989); Wild Rice River Estates, Inc. v. City of Fargo, 705 N.W.2d 850, 856-57 (N.D. 2005); State ex rel. R.T.G., Inc. v. State, 780 N.E.2d 998, 1005-06 (Ohio 2002); Edmondson v. Pearce, 91 P.3d 605, 617-20 (Okla. 2004); Machipongo Land & Coal Co. v. Commonwealth,

with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed.") (quoting Stockdale v. Rio Grande W. Ry. Co., 77 P. 849, 852 (Utah 1904)); Manufactured Hous. Cmtys. of Wash. v. State, 13 P.3d 183, 187-88 (Wash. 2000); Guimont v. Clarke, 854 P.2d 1, 5-11 (Wash. 1993) (articulating a series of tests to determine if a compensable taking has occurred, drawing upon both state and federal precedents).

799 A.2d 751, 763 n.7 (Pa. 2002); Palazzolo v. State ex rel. Tavares, 746 A.2d 707, 712 (R.I. 2000) overruled on other grounds by Palazzolo v. Rhode Island, 533 U.S. 606 (2001); Byrd v. City of Hartsville, 620 S.E.2d 76, 79 n.6 (S.C. 2005); Krier v. Dell Rapids Twp., 709 N.W.2d 841, 846 (S.D. 2006); Sheffield Dev. Co. v. City of Glenn Heights, 140 S.W.3d 660, 669 (Tex. 2004); Ondovchik Family Ltd. P'ship v. Agency of Transp., 996 A.2d 1179, 1183-84 (Vt. 2010); Bd. of Supervisors of Culpeper Cnty. v. Greengael, L.L.C., 626 S.E.2d 357, 369 (Va. 2006); McFillian v. Berkeley Cnty. Planning Comm'n, 438 S.E.2d 801, 809 (W.Va. 1993); R.W. Docks & Slips v. State, 628 N.W.2d 781, 785-87 (Wis. 2001); Cheyenne Airport Bd. v. Rogers, 707 P.2d 717, 728-31 (Wyo. 1985). But see Town of Gurley v. M & N Materials, Inc., Nos. 1110439, 1110507, 2012 WL 6634447, at *9 (Ala. 2012) (declining to recognize regulatory takings under the state constitution and rejecting federal precedents).

*B. The Tennessee Constitution Encompasses Regulatory Takings*

Whether article I, section 21 of the Tennessee Constitution encompasses regulatory takings is an issue of first impression for this Court. See B & B Enters. of Wilson Cnty. L.L.C., 318 S.W.3d at 846 (presuming but not deciding that art. I, section 21 is broad enough to include regulatory takings claims).[11] In addressing this issue, we recognize that state constitutional provisions "may impose higher standards and stronger protections than those set by the federal constitution . . . . even where the state and federal constitutions contain similar or identical provisions." State v. Randolph, 74 S.W.3d 330, 334-35 (Tenn. 2002) (quoting Miller v. State, 585 S.W.2d 758, 760 (Tenn. 1979)). Additionally, there is no reason why the state constitution cannot be interpreted to provide fewer protections than the Federal Constitution, although of course where the Federal Constitution is more expansive, it must

---

[11] Although this Court has not addressed the issue, in Bayside Warehouse Co. v. City of Memphis, 470 S.W.2d 375, 378 (Tenn. Ct. App. 1971), the Court of Appeals applied Justice Holmes's reasoning in Pennsylvania Coal to affirm the trial court's judgment that when the Memphis City Council re-zoned a portion of a river island from industrial to commercial use where no commercial use was possible, and with the intention of effectively "freez[ing]" the land for future use, its actions were arbitrary and unlawful and therefore constituted a regulatory taking. The Court of Appeals explained that "when [governmental] regulation goes so far as to deprive an owner of the beneficial use of his property, it becomes confiscatory and constitutes a taking without due process of law." Id. (citing Penn. Coal Co., 260 U.S. at 415); see also Knox Loudon Corp. v. Town of Farragut, No. E2000-00174-COA-R3-CV, 2000 WL 775077, at *4 (Tenn. Ct. App. June 16, 2000) (holding that requiring a dedication of property to obtain plat approval would have been a taking had the initial plans met all zoning requirements); MC Props., Inc v. City of Chattanooga, 994 S.W.2d 132, 136 (Tenn. Ct. App. 1999) (concluding that no taking occurred where a beneficial use remained after the city council refused to rezone land from residential to commercial use); McClurkan v. Bd. of Zoning Appeals for Metro. Gov't, 565 S.W.2d 495, 498 (Tenn. Ct. App. 1977) (finding no taking in the denial of a zoning variance); Campbell v. Nance, 555 S.W.2d 407, 408 (Tenn. Ct. App. 1976) (following Bayside to find a zoning ordinance to have deprived plaintiffs of the beneficial use of their lot).

override contrary state law. Sanders v. State, 585 A.2d 117, 146 n.25 (Del. 1990). But this Court will not interpret a state constitutional provision differently than a similar federal constitutional provision unless there are sufficient textual or historical differences, or other grounds for doing so. State v. Watkins, 362 S.W.3d 530, 555 (Tenn. 2012); State v. Vineyard, 958 S.W.2d 730, 733-34 (Tenn. 1997).

We thus begin with a comparison of the text of the federal and state provisions. The Takings Clause of the United States Constitution declares "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend V. Article I, section 21 provides "[t]hat no man's particular services shall be demanded, or property taken, or applied to public use . . . without just compensation being made therefor." Tenn. Const. art. I, § 21. The wording of the Takings Clause and article I, section 21 are similar, and no textual variances suggest that article I, section 21 should be interpreted differently than the Takings Clause of the Fifth Amendment.

Additionally, eminent domain and inverse condemnation statutes[12] enacted to implement article I, section 21 strongly protect private property rights by stating that the power of eminent domain should be used sparingly, by broadly prohibiting the government from taking private property for private purposes,[13] and by requiring just compensation when private property is taken for public purposes. Tenn. Code Ann. §§ 29-16-101 to -127 (2012 & Supp. 2013); Tenn. Code Ann. §§ 29-17-101 to -1004 (2012 & Supp. 2013); Edwards v. Hallsdale-Powell Util. Dist. Knox Cnty., 115 S.W.3d 461, 464 (Tenn. 2003); Jackson, 922 S.W.2d at 861. The statutes implementing article I, section 21 certainly do not suggest that it should be interpreted as less protective of the rights of private property owners than the corresponding federal constitutional provision.

---

[12] Eminent domain statutes apply in a "legal proceeding in which a government asserts its authority to condemn property," and inverse condemnation refers to "the manner in which a landowner recovers just compensation for a taking of property when condemnation proceedings have not been instituted." Jackson v. Metro. Knoxville Airport Auth., 922 S.W.2d 860, 861-62 (Tenn. 1996).

[13] In response to the Supreme Court's decision in Kelo v. City of New London, 545 U.S. 469 (2005), the General Assembly passed Public Act 863, providing that "the power of eminent domain shall be used sparingly, and that laws permitting the use of eminent domain shall be narrowly construed so as not to enlarge by inference or inadvertently the power of eminent domain." Act of May 25, 2006, ch. 863, sec. 1, 2006 Tenn. Pub. Acts 2143, 2144 (amending Tenn. Code Ann. § 29-17-101 (2005)). The Act also provided that "public use" "shall not include either private use or benefit or the indirect public benefits resulting from private economic development and private commercial enterprise, including increased tax revenue and increased employment opportunity," with listed exceptions such as public transportation, public utilities, urban renewal, and industrial parks. Id. See Scott Griswold, Property Rights v. Public Use: Analyzing Tennessee's Response to Kelo Eminent Domain Ruling, 43 Tenn. B.J. 14 (2007).

It is true that until today this Court has recognized only physical occupation takings[14] and nuisance-type takings.[15]  See Edwards, 115 S.W.3d at 465 (quoting Pleasant View Util. Dist v. Vradenburg, 545 S.W.2d 733, 735 (Tenn. 1977)); Lea v. Louisville & Nashville R.R. Co., 188 S.W. 215, 219 (Tenn. 1916).  However, our takings jurisprudence has been relatively narrow and based largely upon precedents that pre-date Penn Central and the United States Supreme Court's modern regulatory takings regime.  Indeed, the cases frequently cited for the central tenets of Tennessee takings law often date from the turn of the last century, pre-dating even Pennsylvania Coal—the landmark decision recognizing regulatory takings.  The fact that this Court has not historically had an occasion to interpret article I, section 21 as encompassing regulatory takings does not suggest that it *should* be interpreted as affording less protection to property owners than the Takings Clause of the federal constitution.

Therefore, given the textual similarities between the federal Takings Clause and article I, section 21 of the Tennessee Constitution, the lack of any historical basis indicating that it should be viewed as less protective of private property rights than the federal Takings Clause, and the widespread adoption of federal regulatory takings jurisprudence by other state courts, we hold that article I, section 21 of the Tennessee Constitution encompasses regulatory takings to the same extent as the Takings Clause of the Fifth Amendment to the United States Constitution.  To hold otherwise would needlessly complicate an already complex area of law, increase uncertainty for litigants attempting to bring claims under both the federal and state constitutions, and place Tennessee at odds with the vast majority of states, nearly all of which have already adopted federal takings jurisprudence.

---

[14] Physical occupation takings occur when the government "causes either a direct and continuing physical invasion of private property or a destruction of a plaintiff's property rights."  Edwards, 115 S.W.3d at 465; see also Jackson, 922 S.W.2d at 862; Ill. Cent. R.R. Co. v. Moriarity, 186 S.W. 1053, 1054 (Tenn. 1916); Barron v. City of Memphis, 80 S.W. 832 (Tenn. 1904).

[15] A nuisance-type taking occurs where the plaintiff "allege[s] a direct and substantial interference with the beneficial use and enjoyment of the property; this interference must be repeated and not just occasional; the interference must peculiarly affect the property in a manner different than the effect of the interference to the public at large; and the interference must result in a loss of market value."  Edwards, 115 S.W.3d at 465 (citing Jackson, 922 S.W.2d at 865 (involving government extension of an airport runway resulting in noise, vibrations and pollutants from low-flying airplanes may be a taking of nearby property)); Pleasant View Util. Dist., 545 S.W.2d at 735 (finding a waste water discharge over private property a nuisance-type taking).

*C. The Sufficiency of the Property Owners' Complaint*

The County does not in this Court argue that the allegations of the Property Owners' complaint are insufficient to state a regulatory takings claim. Rather the County argues only that the complaint should be dismissed because the Tennessee Constitution does not encompass regulatory takings. Having now determined that article I, section 21 includes regulatory takings, we conclude that, taking the allegations in the light most favorable to the Property Owners, the complaint is sufficient to state a regulatory takings claim, although it is barely sufficient, even under Tennessee's liberal notice pleading standards. Webb, 346 S.W.3d at 427. We express no opinion as to whether the Property Owners will ultimately be able to prove that a regulatory taking has indeed occurred. We decide only that the claim may proceed.

## IV. CONCLUSION

We hold that, like the Takings Clause of the United States Constitution, article I, section 21 of the Tennessee Constitution encompasses regulatory takings and that the Property Owners' complaint is sufficient to allege a state constitutional regulatory taking claim, for which they may seek compensation under Tennessee's inverse condemnation statute, Tennessee Code Annotated section 29-16-123. Accordingly, we reverse the Court of Appeals' judgment insofar as it reversed the trial court's judgment and dismissed the Property Owners' regulatory taking claim and affirm that portion of the Court of Appeals' judgment remanding this matter to the trial court for further proceedings. Costs of this appeal are taxed to Montgomery County, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE

-12-